**VIRGINIAN RY. CO. v. CHAMBERS.** *

**SAME v. FITZGERALD.**

**SAME v. HYLTON.**

Nos. 3014-3016.

Circuit Court of Appeals, Fourth Circuit.
Dec. 19, 1930.

Rehearing Denied Jan. 16, 1931.

*Certiorari granted 51 S. Ct. 352, 75 L. Ed. ——.

John R. Pendleton, of Princeton, W. Va. (Harry C. Ellett, of Princeton, W. Va., on the brief), for appellant.

Russell S. Ritz, of Bluefield, W. Va. (Grover C. Worrell, of Mullens, W. Va., C. D. Mahood, of Princeton, W. Va., and H. F. Porterfield, of Bluefield, W. Va., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

ERNEST F. COCHRAN, District Judge.

The appellant, the Virginian Railway Company, was the defendant in all three cases herein, and the appellees were the plaintiffs, and will hereinafter be referred to as the defendant and the plaintiffs, respectively.

The cases of Fitzgerald and Hylton, Nos. 3015 and 3016, were tried together in the District Court by agreement of the parties. The District Court directed a verdict for the plaintiff in all three cases. All the appeals present the same questions of law, with little variation in the facts, and by agreement of all parties the appeals were heard together in this court.

The claim of each plaintiff is for wages alleged to be due him, which he would have earned as an employee, if he had not been held out of the defendant's service. The original declaration in each case contained the common counts in assumpsit, and a special count based upon an award made by the United States Railway Labor Board. The District Court, over the objection of the defendant, allowed the declaration to be amended by adding a count for the wages claimed based upon a contract between the labor unions to which the plaintiff belonged and the defendant, the railroad company.

The material facts are substantially as follows:

The plaintiff Chambers was an engineer, and the plaintiffs Fitzgerald and Hylton were firemen, in the employ of the defendant. A dispute arose whether the relationship had been terminated or not. There are some differences here between the case of Chambers and those of the other two plaintiffs, but they are not material upon the decision of the questions presented. It is sufficient to say that as to all of them, the railroad company claimed that the relationship had been terminated either by discharge for just cause or by their voluntarily leaving the service. The plaintiffs claimed that the relationship

had not been terminated, or, if so, it was not terminated by their action but by a wrongful discharge. The plaintiff Chambers was a member of the Brotherhood of Locomotive Engineers, and Fitzgerald and Hylton were members of the Brotherhood of Firemen. The defendant had what is termed a working agreement with those two labor organizations. The agreement with the Brotherhood of Engineers contained the following provision:

"No engineer will be suspended, record marked, or discharged from the service of the company without just cause. He will be given a prompt hearing, within five days if practicable, and notified promptly of the decision rendered. He may have at his investigation an engineer in good standing; and if he considers the punishment unjust an appeal may be made within sixty days, in writing, personally or by representative, from the superintendent to the general superintendent, and from the general superintendent to the general manager. If upon investigation it is found that the punishment is unjust, pay will be allowed for all time lost. He or his representative will be allowed to review all reports of evidence."

A similar provision is contained in the agreement with the Brotherhood of Firemen.

The plaintiffs submitted their grievances to their respective labor organizations which in turn took the matter up with the representative of the railroad company. Pursuant to the provisions of the agreement above quoted, the plaintiffs applied for and were given a hearing on appeal by the defendant's superintendent, general superintendent, and general manager, in turn, each of whom decided against the plaintiffs' claim. The representatives of the two brotherhoods that had been looking after the complaints of these three employees, along with some other employees, on account of the refusal of the defendant company to reinstate the plaintiffs into its service and on account of some other complaints, called a general strike of the engineers and firemen employed by the defendant company. Thereupon the United States Labor Board on its own initiative assumed jurisdiction of the dispute under the Transportation Act of 1920, cited the parties to appear before it for a hearing and directed that the status quo be maintained. Nevertheless, the strike went into effect.

Some contention is made in this court that the Labor Board did not assume jurisdiction on its own initiative. The chairman of the Labor Board at the opening of the hearing expressly stated that the Labor Board had assumed jurisdiction on its own initiative. The plaintiffs claim that there was an express mutual agreement between them and the defendant to submit their differences to the Labor Board and be bound by its decision. But inasmuch as we now have under consideration the question whether the District Court erred in directing a verdict in favor of the plaintiffs, under the well-known rule we shall have to consider the evidence, just as the District Court should consider it, in its most favorable aspect to the defendant. No useful purpose would be subserved by reviewing this evidence in detail; but it is sufficient to say that there was ample evidence from which the jury could have inferred that there was no such agreement.

A hearing of the complaints of the three plaintiffs was had by the Labor Board, at which the representatives of all parties appeared and presented their contentions. The Labor Board decided that these three employees should be reinstated into the defendant's service (which carried with it their seniority rights), and that they should be paid for time lost when held out of service, less any amount earned in other employment during that time.

Upon being notified of the board's decision, the defendant sent to the plaintiff Chambers the following letter:

"Mr. B. E. Chambers,
"Princeton, W. Va.
"Dear Sir:

"We have received from the Labor Board Decisions in the cases heard on the 14, 15 and 16 of the month, and in your case their decision is that you have been reinstated, without impairment of seniority, to the position of Locomotive Engineer on this line. You will, therefore, please arrange to report for duty not later than 7 AM December 1st, 1923.

"The decision as to back pay will be taken care of after you have reported for duty and rendered sworn statement covering the amount earned by you since leaving the services of the Virginian Railway Company.

"Yours truly,      J. W. Sasser,
"Supt. Motive Power."

A similar letter was sent to the plaintiffs Hylton and Fitzgerald.

Each plaintiff reported for duty and rendered a sworn statement of the amount earned by him during the period in question. They were then called to work, but refused to work on the ground that their organizations were out on a strike. They were each

then requested to appear for hearing, which they refused to do, and were each again dismissed from the service. The defendant notified the Labor Board that the plaintiffs had reported for duty, but had declined to work.

These suits were instituted by plaintiffs to recover wages that they would have earned during the period they were out of service of the defendant up to the time they declined to work on account of the pendency of the strike, less any amount they had earned during that period.

■■ The first question for consideration, as stated by counsel for the plaintiffs, is: What effect should be given to the decision of the Labor Board? The plaintiffs contend that even though there be no mutual agreement to be bound by the award, nor subsequent acceptance or ratification thereof, nevertheless the award would be binding. The power of the Labor Board, under the Transportation Act of 1920 (41 Stat. 456, 469 [45 USCA § 131 et seq.]), has been definitely determined by the Supreme Court of the United States. That court has held that the decisions of the Labor Board are not to be enforced by process. The only sanction of its decisions is to be the force of public opinion invoked by the fairness of a full hearing, the intrinsic justice of the conclusion, strengthened by the official prestige of the board, and the full publication of the violation of such decision by any party to the proceeding. The object of the act was to fasten public attention closely on all the circumstances of the controversy, and arouse public criticism of the side thought to be at fault. It was held that the Labor Board was to act as a board of arbitration, but that there was no constraint upon the parties to do what the board decided they should do except the moral constraint of publication of its decision. Penn R. R. Co. v. U. S. R. R. Labor Board et al., 261 U. S. 72, 43 S. Ct. 278, 67 L. Ed. 536; Penn. R. R. System et al. v. Penn. R. R. Co., 267 U. S. 203, 45 S. Ct. 307, 69 L. Ed. 574; Texas & New Orleans R. R. Co. et al. v. Brotherhood of Ry. & Steamship Clerks et al., 281 U. S. 548, 50 S. Ct. 427, 74 L. Ed. 1034.

It is urged, however, by counsel for the plaintiffs, that although the award of the Labor Board is not binding, nevertheless that it may be used in evidence and is then conclusive. If the Labor Board's award can be offered in evidence and is then conclusive between the parties, it becomes in fact a binding award. But the Supreme Court in the decisions cited has expressly decided that the award is not binding on any of the parties.

To say that the award is not binding upon the parties, that the board has no power to put any constraint upon either party beyond the pressure of public opinion, and yet that in a subsequent action between the parties, the award may be offered in evidence and is then conclusive, is a contradiction in terms and about as clear a case of a reductio ad absurdum as can be suggested. But we do not think that the award is any evidence against the parties to establish the facts which the award found, in the absence of a previous agreement or subsequent ratification. It is clear under the decisions of the Supreme Court that the award has no effect whatever upon the rights of the parties, save as the constraint of public opinion may force them to accept it.

The plaintiffs contend, however, that even if the Labor Board was not authorized by the act of Congress to make a binding award, nevertheless, the parties would have a right to agree to submit the case to that tribunal, and the award would then be binding. We agree with this contention, but the difficulty in this case is that the evidence upon the question whether or not there was an express mutual agreement to submit to the Labor Board and be bound by its decision is, to say the least, not of such conclusive character as to warrant the District Court in taking that question from the jury and directing a verdict on that ground.

■ But although the Labor Board has no power to make a binding award, nevertheless the parties may accept or ratify the award, and it then becomes binding. Here, the defendant accepted the award, so notified the plaintiffs in writing and received all the benefits which might accrue to it from public opinion by its acceptance of the board's decision. The plaintiffs also accepted and, in compliance with the terms of the defendant's acceptance, reported for duty and rendered the sworn statements of their earnings as required by the defendant's letter to them. This action of the parties in ratifying the award made a complete and binding contract, as fully as if they had agreed in advance to be bound by the board's decision. It is suggested, however, that the plaintiffs violated the terms of the written acceptance of the defendant when they refused to work. Neither the decision of the Labor Board nor the terms of the written acceptance on the part of the defendant required that they should work. When the letter is construed in the light of all the surrounding circumstances, it can hardly be maintained that it

was intended to require the plaintiffs to work, notwithstanding the strike, or that the plaintiffs ought to have so understood it. If the defendant had intended to make that a condition of its acceptance, it could and should have stated it clearly and explicitly. Certainly the plaintiffs complied literally with the terms of the acceptance. Compare Hoey v. New Orleans Great Northern R. R. Co., 159 La. 258, 105 So. 310, 47 A. L. R. 832, and St. Louis B. & M. Ry. Co. v. Booker (Tex. Civ. App.) 5 S.W. (2d) 856. We conclude, therefore, that the parties having accepted and ratified the award, are bound by it, and the court properly directed a verdict for the plaintiffs under the special count of the declaration based on the award.

This conclusion renders it unnecessary to consider whether the verdict directed by the District Court can be sustained under the count based on the contract between the labor unions to which the plaintiffs belonged and the defendant, which was added to the declaration by amendment.

Error has been assigned also to the action of the District Court in permitting the declaration to be amended by adding the count based on that contract. Under the broad provisions of the federal statutes relative to amendments (U. S. Code, title 28, § 777 [28 USCA § 777]), as construed by this court in Mims v. Reid, 275 F. 177, the amendment appears to have been properly allowed. But inasmuch as we have sustained the verdict under the special count based on the award and not on the count introduced by the amendment and based on the contract, it is not necessary to discuss or decide the question whether the amendment should have been allowed or not.

The plaintiff Chambers also appealed in his case on the ground that the verdict should have been directed for a larger sum. When the court directed a verdict in his favor, he did not except to it, nor did he point out any error, nor did he obtain any ruling in that respect. He made a motion for a new trial, which is merely in general terms, to the effect that the verdict is for a less sum than the evidence shows him entitled to recover. Under the numerous decisions of this court, the refusal of a motion for a new trial is not appealable, and in addition, in this case, no definite grounds are assigned of which this court could in any event take notice. His assignments of error are in general terms, stating simply that he was entitled to a verdict for a larger sum. As far as we recall, nothing was said about his appeal in the oral argument, and in the brief presented for him by his counsel, there is only a very short statement upon the subject at the close of the brief. There being nothing in the record of any ruling of the District Court and exception thereto, there is no question of law presented of which this court can take cognizance. This court cannot undertake to sift the evidence and endeavor to discover an error, simply because the plaintiff has assigned error in general terms.

The judgment of the District Court in each of the cases is therefore affirmed.

### On Petition for Rehearing.

PER CURIAM.

The defendant has filed a petition for rehearing. All of the points set forth in the petition for rehearing have been fully considered by the court except one. It is stated in the opinion that the plaintiffs rendered the sworn statements of their earnings from other employment during the period of time they were held out of the service of the defendant. This statement is not entirely accurate, but, under the facts of the case, the point, now raised for the first time, cannot avail the defendant. It is clear from the record that the plaintiffs were ready to furnish the statements and would have done so, if the defendant had refused to pay on that ground. The defendant, however, did not refuse on that ground, but on the ground that they had failed to work when called upon. In the Fitzgerald case, the record is silent as to whether the statement was actually furnished or not. In the Hylton case, it appears that the statement was not furnished prior to the suit. In the Chambers case, it appears that before suit, but some time after Chambers had been finally dismissed from defendant's service, in response to a letter from the defendant, the plaintiff Chambers furnished a detailed statement of his earnings. There can be little doubt that if the defendant had requested statements from Hylton and Fitzgerald, they would have been forthcoming also. Having refused to pay upon a ground which is not tenable, the defendant cannot now escape payment because of failure to comply with a condition which was not insisted upon at the time, and which could easily have been complied with, if it had been insisted upon. There is no evidence that at any time the defendant ever made any point of the fact that the statements were not actually rendered as a ground for its refusal to pay. The defendant when notifying the Labor

Board that the plaintiffs had failed to work when called on, made no mention of any failure of theirs to render statements. When they were called up for investigation and dismissed finally from the service, it was solely upon the ground that they had failed to work and not because of the failure to render statements. No such point was made in the trial below, nor is there any assignment of error based on the failure to render statements, nor was it argued in this court either orally or in the briefs. It would be unjust in the extreme to permit the defendant at this late day to escape payment by reason of the failure of the plaintiffs to render statements, when the statements could have been easily supplied, and no doubt would have been, if the defendant had ever indicated in the slightest degree that it was refusing payment on such ground.

The petition for rehearing is therefore denied.