GEORGE S. GEORGE v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.[1]

No. 28,288.

March 27, 1931.

[1]Reported in 235 N. W. 673, 237 N. W. 876.

612

O'Brien, Horn & Stringer, for appellant.
Tautges, Wilder & McDonald and M. H. Boutelle, for respondent.

DIBELL, J.

Action by the plaintiff to recover the amount of wages lost through the refusal of the defendant to furnish him employment as a fireman in accordance with the seniority rules which were a part of the contract of employment. Defendant's motion for a directed verdict at the close of the testimony was denied. The defendant afterwards moved for judgment notwithstanding the verdict. The motion was denied. There was no motion for a new trial. The defendant appeals from the judgment for the plaintiff entered upon the verdict.

The only question is whether upon any ground asserted the defendant was entitled to a directed verdict at the trial and is now entitled to judgment notwithstanding. The evidence must be considered favorably to the plaintiff; and in the opinion we often will refer to facts favorable to the plaintiff as true though there was evidence in dispute of them. Whatever issue could have been found favorably to the plaintiff on the evidence must be taken as so found.

The plaintiff entered the employ of the defendant in November, 1922, as a locomotive fireman. Under the contract with the railroad company he acquired seniority rights and could be discharged only for cause. For the purposes of this case only and going no further, the defendant concedes that the schedule of seniority rights is a part of the contract of employment.

In April, 1924, he was an extra fireman. In that month, because of force reduction, he was "cut off the board," as the term is. This left him free to take other employment. He need not hold himself in readiness to respond to immediate calls, nor did he lose his seniority rights as fireman. If the force was increased he was entitled to employment in accordance with his seniority rights.

After going off the board the plaintiff took work in the roundhouse of the defendant as hostler's helper. He took occasional emergency runs as fireman. His work in the roundhouse was not always regular. He did not always respond to calls. The superintendent of the roundhouse remonstrated and was told that he had a promising outlook outside of railroad work in an advertising proposition and if everything went well he would quit; and if he did not return within four days he might disregard him. He went away and did not return and was treated as no longer an employe. The defendant claims that this amounted to a resignation both as a hostler's helper and as an engineman. The plaintiff claims that it amounted to no more than a resignation as a hostler's helper and that his seniority rights as an engineman continued. It is not unfair to the defendant to hold this question one of fact. The superintendent had nothing to do with the plaintiff in his employment as fireman. His authority extended only to his employment at the roundhouse as a helper. Under the classification he got the wages of a common laborer in his employment as hostler's helper. The wages as fireman were attractive, and he had accumulated valuable seniority rights. He was some 38 or 39 years of age, and he surrendered something of value if he surrendered his seniority rights as fireman. The jury were justified in finding that he did not.

■ Another claim of the defendant is that the plaintiff was discharged for cause. There is evidence that plaintiff was called in the usual way by a call-boy on November 4, 1924, for an immediate run as fireman in apparent recognition of his seniority rights. The call-boy told him that they were "putting you on the board and going to run you right out." The plaintiff had just finished working 12 hours for a plumber, and says he was not fit to take a fireman's

run. He had to have rest. He so informed the call-boy and asked him to tell the railway people that he would be on hand the next day. He reported the next day and diligently thereafter but did not get work. He seemed unable to get in touch with the proper officer. He finally was discharged. Whether this discharge was rightful under the rules was at least a question for the jury. The plaintiff had valuable seniority rights recognized by the defendant. Trainmen, under the law, are not allowed to work more than 16 hours consecutively. This is partly for humanitarian reasons and partly for the protection of the public and perhaps to the advantage of the railway company. The plaintiff was then working, as he had the right, for someone other than the defendant. He was not on the board. To protect his seniority rights he was not required to hold himself in instant readiness to respond to the call-boy's notice. It cannot be said as a matter of law that he should have taken the run immediately upon the termination of 12 hours' work. Probably the railroad would not have asked it had it known the facts. The jury could find that he acted reasonably and did not forfeit his seniority rights and that a discharge was not justified. There is a claim that the plaintiff was not accorded the hearing for which his contract provided. In view of the conclusion reached we do not stop to consider this point.

The plaintiff belonged to the brotherhood of locomotive firemen and enginemen. He ceased to be a member on May 2, 1925, because of nonpayment of dues. He was reinstated in 1927 upon payment. Negotiations were had between the plaintiff's union and the defendant at his request relative to his reinstatement. He was reinstated as an employe on October 13, 1925. It is claimed that he was reinstated to his seniority rights upon condition that he waive any claim against the defendant for wages which he had lost. The plaintiff claims that his representative in the union had no authority to waive his claim for time lost and that before the negotiations were closed he so informed the officers of the railroad. At that time he had been expelled for nonpayment of dues and to some extent was representing himself. He told the defendant that the brotherhood

was not representing him. The evidence was such as to make the question of authority in the union, and the plaintiff's notification of lack of authority to the defendant, for the jury. We do not stop to consider what would be the effect of the representation by a member of the union and the waiver of a claim of wages, without specific authority, in the ordinary case. This case is quite different.

■ Shortly after the formal reinstatement the plaintiff returned to work. He made a demand for wages lost. The defendant disclaimed liability and assigned as a reason his waiver. He denied authority in the officers of the union to waive lost time. The formal application for reinstatement asserted a claim for wages. The company officers knew it. The plaintiff was always claiming for time lost. He asserted a claim upon his reinstatement. He worked on until May 3, 1929. After the reinstatement the defendant threatened to withdraw reinstatement if he insisted upon lost time. It did not do so. The matter was always in controversy. In this situation the defendant cannot insist that the plaintiff, by accepting the fruits of the work of the brotherhood, as a matter of law conferred authority upon it or ratified its act within 1 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 149-151, 176-184. Besides, the jury found that there never was a .valid surrender by the plaintiff nor discharge by the defendant, and therefore the seniority rights continued.

Judgment affirmed.

Stone, J. took no part.

AFTER REARGUMENT.

On September 18, 1931, the following opinion was filed:

Dibell, J.

The defendant's motion for a reargument was granted. It was submitted on briefs.

■ Article 23 (a) of the rules, conceded, for the purpose of this appeal only, to be a valid contract between the railroad and its firemen and enginemen, provides that a fireman shall not be dismissed from service without just cause or before being given a

hearing. In paragraph two of the former opinion we referred to the call of the plaintiff to immediate service when he was on the board but not in actual service, as he was returning from 12 hours' work as a plumber; and his claim that without rest he was unfit for service as a fireman. In paragraph two, having in mind the situation of the plaintiff, we stated that whether he was rightfully discharged was a question for the jury. There was also a reference to the question of rightful discharge in paragraph four of the syllabus and opinion. The trial court charged the jury that whether he was dismissed for just cause was not for the jury but for the railway officials to determine at a hearing held pursuant to the rules. There was no exception to the charge of the court. It became the law of the case.

We withdraw the statements in the syllabus and opinion to which we have referred. They should not have been made. They do not affect the result. No one claims that a railway may not select its personnel. We refrain, upon the ground that it is not involved, from considering the rights or remedies of a fireman under rule 23(a) if discharged after a hearing before the company's officers. The cases cited by the defendant in support of its contention that the finding of the employer's officers is final in all situations are not particularly in point. There is ample authority to meet situations which will arise. And again, the whole paragraph might be omitted, for there was a reinstatement.

Article 23(e) provides that no consideration will be given to grievances not presented in writing within 30 days of the occurrence. The claim is made, and it did not receive attention in the original opinion, that plaintiff's grievance was not presented in writing within 30 days and therefore he is without remedy. It was not so presented. There was no notice to the plaintiff of an intended dismissal or discharge. The parties corresponded about reinstatement. They talked about it. There was no suggestion that the grievance be presented in writing or that there was need of a writing. The hearing was informal. The defendant consented. Lack of formality cannot now be stressed. And all else aside, there

was a reinstatement with a restoration of seniority. It is indeed evident that the superintendent felt the importance of seniority rights and was sympathetic with the view that the plaintiff's leaving a hostler's job was not a surrender of seniority rights as a fireman, a matter considered in paragraph one of the opinion, and was disposed to a restoration. He made no complaint of any defects in procedure affecting the merits. The company was disposed to treat the plaintiff fairly; and its real grievance, which it is easy to understand, is that the plaintiff made a claim for pay when he was not at work, contrary to what it claims the agreement was. The claim that he should have presented his grievance in writing is too late. What is said in Virginian Ry. Co. v. Chambers (C. C. A.) 46 F. (2d) 20, par. 6, cited by the plaintiff on reargument, relative to a belated insistence on a preliminary procedural requirement of the rules, with which the parties chose to dispense and without which they proceeded satisfactorily, is quite in point. We imagine there are many other analogous cases. See Anderson v. Hanson, 28 Minn. 400, 10 N. W. 429; Holmes v. Igo, 110 Minn. 133, 124 N. W. 974; State ex rel. Grubbs v. Schulz, 142 Minn. 112, 171 N. W. 263; Weir v. West, 27 Kan. 650; Hackney v. Adam, 20 N. D. 130, 127 N. W. 519. The finding against the defendant on the three specific contentions of the defendant considered in paragraphs one, three, and four are determinative against it.

The matters to which we have referred in paragraphs two and four of the syllabus and the same numbered paragraphs of the opinion are stricken; the result is not changed.

Judgment affirmed.

STONE, J. took no part.