**SAN ANTONIO & A. P. RY. CO. v. COLLINS.**

No. 1357—5925.

Commission of Appeals of Texas, Section B.

May 31, 1933.

Baker, Botts, Parker & Garwood, Arterbury & Coolidge, C. E. Coolidge, and John T. Garrison, all of Houston, for plaintiff in error.

Charles Murphy and Atkinson & Gaugler, all of Houston, for defendant in error.

RYAN, Judge.

E. J. Collins entered the service of the San Antonio & Aransas Pass Railway Company as a switchman in its yards at Houston, Tex., on or about May 4, 1909. The switch engine upon which Collins was employed was discontinued on May 13, 1921, and a reassignment had of yard engines in the Houston yard, under which, effective on May 14, 1921,

as per bulletin posted on May 3, 1921, "the second trick yard engine at Houston goes back to the former time, 8 A. M. to 4 P. M., instead of 4 P. M. to 12 midnight. There is a vacancy for one engine foreman and three helpers in the Houston yard, 8 P. M. to 4 A. M. shift."

There was in effect at that time an agreement or contract between the railway company and the Brotherhood of Railroad Trainmen, governing wages and working conditions for yardmen, said brotherhood representing a majority of the craft or class of employees known as yardmen and, as admitted by the railway company, authorized to make an agreement applicable to all employees in such craft or class; this agreement was effective since May 1, 1920; a similar agreement had been entered into under date of January 15, 1913, which was continuously in effect after that date to May 1, 1920.

It was admitted by the company that all such employees entering and remaining in service since January 15, 1913, "up to the present time are assumed to have had knowledge of said agreement, and to have entered and remained in the service with a knowledge and understanding that they would be governed thereby, and that it is the duty of the railway company to comply in all respects with the agreement entered into, in good faith, with the organization representing the majority of the switchmen on its railway."

It was also admitted that the change in the hours of service of a yard engine amounted to the discontinuance of one job and the creation of a new job.

Collins claims that under the rule of seniority, provided in the contract, he should have been assigned to the engine that performs in the Houston yard, in the shift from 8 p. m. to 4 a. m., under sections B and C, art. 21, of the contract, as follows:

"(B) Seniority rights of yardmen will date from the time they last enter the service.

"(C) The right to preference of work and promotion will be governed by seniority in the service. The yardman longest in the service will be given the preference."

The bulletin posted on May 3, 1921, was signed by Collins and W. G. Elam, the latter holding seniority from August 31, 1917, eight years and twenty days younger in the service than Collins. Such posting of bulletin seems to have been governed by certain provisions of article 24 of the contract, viz.:

"(A) When a vacancy occurs on a regular yard engine, or a new yard is established, or an additional engine is put on, same will be bulletined for a period of five days. Senior yardmen signing will be placed on same.

"Yard vacancies will be bulletined for foremen and helpers separately. The senior applicant signing bulletin will be awarded the position.

"Should more than one bulletin be posted at the same time, yardmen signing same will write opposite their names first, second or third choice, and so on.

"The Company will see that bulletins are determined as soon as possible, having bulletins at outside points forwarded to the Division Superintendent at Yoakum on first passenger train after bulletin comes down.

"(B) Should a bulletin be posted and no signatures appear on same, a man may be hired and placed in the vacancy, who will hold position thus obtained until displaced on account of reduction of crews or seniority changes.

"(C) When a regular yardman loses his position, either by reduction of crews or seniority changes, he may take any position his seniority entitles him to, either as foreman or helper."

Although Elam was junior to Collins in seniority, he was given the position on the newly created second trick engine working from 8 p. m. to 4 a. m., as stated by the company, in order to comply with section A, art. 25, of the agreement. Section K, art. 24 thereof, reads as follows, viz.: "(K) In assigning men under these or other seniority rules, the provisions of Section A of Article 25 will be complied with."

Collins was not a member of the Brotherhood of Railway Trainmen. Elam was a member of said brotherhood, which it appears at that time did not have 85 per cent. of the yardmen at Houston in its membership, and therefore it is claimed by the company that Collins' seniority must yield to Elam's membership in the brotherhood.

The contention on the company's part is that it is obligated to preferentially furnish employment to members of said brotherhood up to 85 per cent. of the yardmen employed at Houston, and that Elam, a member thereof, being next in seniority to Collins, was properly placed in the job, instead of the latter.

On the other hand, the contention of Collins is that section B of said article 25 applies to him, regardless of such membership, because he was then in the company's service, and expressly provides that section A shall not operate retroactively, and preserves to him all his seniority rights.

Article 25, Sections A and B, read as follows:

"(A) The B. of R. T. represented in this agreement, will be insured and agreed to maintain not less than eighty-five (85) per cent. of the yardmen employed in each yard, and will be given preference in employment.

"(B) The foregoing will not be retroactive and will not displace men now in service."

The company did, however, notify Collins that he could have any job which his seniority entitled him to in either of the company's

yards at San Antonio or Kennedy, in accordance with article 24, yardmen's agreement. Collins never reported for work at either the San Antonio or Kennedy yards, and in no way attempted to exercise his seniority rights thereat.

It was agreed that Collins could, by reason of his seniority rights, have supplanted men in the San Antonio or Kennedy yards without disturbing the 85 per cent. rule (section A, art. 25 of the contract), and to have placed him on the bulletined job would have disturbed that rule for the Houston yard, in that less than 85 per cent. of the yardmen in service there would then have been members of the Brotherhood of Railroad Trainmen; also that Collins was not dropped from the seniority rolls of the company until after the expiration of ninety days from the day he was notified that he could place himself in either the San Antonio or the Kennedy yards.

Article 37 of the contract reads as follows: "It is understood and agreed that the right to make and interpret contracts, rules, rates and working agreements for yardmen, regular or extra, shall be vested in regularly constituted Committee of the Brotherhood of Railroad Trainmen," and it was agreed that such committee of the brotherhood interpreted the said contract as prohibiting the placing of Collins on said bulletined job.

Article 19 of the contract reads as follows: "A yardman taken out of service for cause shall, if he considers his dismissal unjust, refer his case by written statement to the Division Superintendent within five (5) days and shall be given a hearing within five (5) days from the date of receipt of his written statement, and if held a longer time will be paid for all time so held in excess of five (5) days at regular rates of pay. Yardmen shall have the right to have an employee of their choice, of the same grade of service, present at investigations, and shall have the right to appeal to the higher officers of the Company in case the decision is unsatisfactory. In case the dismissal is found to be unjust, the yardman will be re-instated and paid for all time lost. The decision shall be made in writing in five (5) days after the hearing, and if an appeal is made to the higher officer each appeal must be in writing and be made within ten (10) days after the date the decision is rendered."

About May 14, 1921, Collins was taken out of service, and immediately took the matter of his dismissal up with the agent, then with the superintendent, then with the assistant general manager, who ordered him to return to Houston for service, and, when he returned to Houston for service, was advised by said assistant general manager that his prior decision was in error, and that he (Collins) could not have employment in Houston, but could have employment in Kennedy, or San Antonio, which Collins refused to accept.

The contract provided that complaints of employees, both in the first instance, and, if the decision of the superintendent was not satisfactory, their appeal to the higher officials of the company, should be in writing. Collins made no written complaint to the defendant or its officers, and was not required by them to make any written complaint; his oral statement was received and acted upon by the officers as though written complaint had been made, and no question for necessity for a written complaint was ever urged by the company until the trial of this case.

Collins requested the company to join him in a joint submission of his case to the United States Railroad Labor Board; this the company refused to do, whereupon Collins, through his representative, B. M. Jewell, president Railway Employees' Department, American Federation of Labor, submitted the dispute to said Railroad Labor Board, as involving the subject: "Have the officials of the San Antonio & Aransas Pass Railroad the right to discriminate against members of the Switchmen's Union of North America in their employment or retention in the service as switchmen, or to otherwise invalidate their seniority?" setting forth the facts of the dispute with prayer that the matter be docketed for decision, the interested parties notified, and the dispute be decided by the Board as soon as practicable. A copy of such submission was sent by the secretary of the Labor Board to the vice president and general manager of the railroad company, by whom its receipt was acknowledged, and the agreement between the railroad company and the Brotherhood of Railroad Trainmen ratified, and the company's duty to comply therewith admitted. It was further stated that the brotherhood was equally interested in all questions arising out of the fulfillment of the contract, and it was submitted that the brotherhood are entitled to and should be made a party to the proceeding.

The matter was set for hearing, the railroad company and Jewell, president Railway Employees' Department, American Federation of Labor, notified, and at such hearing the railroad company was represented by its general attorney and assistant general manager, both in person; Collins and his representative, Mr. T. C. Cashen, president of the Switchmen's Union, were also present.

On October 3, 1923, the Labor Board rendered its decision that Collins be reinstated to his former position and seniority status and paid for all time lost on account of the improper application of the seniority rules less any amount he may have earned while engaged in other employment.

On October 20, 1923, Collins advised the vice president and general manager of the railroad company his readiness to abide by the decision of the Labor Board and be placed in the position formerly held by him prior

to May 14, 1921, and that he had not been engaged in any business prior to May 14, 1921.

In this connection, Collins testified without contradiction that he was over sixty years of age when he was released from the company, and has not been engaged in or done any work or business since May 14, 1921, and that was what he meant in his communication of October 20, 1923, to the vice president and general manager of the company. This is approved by the trial court, who found that Collins was not able to secure similar or other employment, that his daily wage was $6.48 per eight hours, and he lost 893 days from the date of his discharge to the date of his reinstatement, a total of $5,786.64.

In reply to Collins' letter of October 20, 1923, above referred to, the vice president and general manager on October 22, 1923, advised Collins that Mr. Goodloe (assistant general manager) had been directed to reinstate him to his former seniority status, which is as of May 24, 1909, whenever "you report to Mr. Smith for duty." Mr. Smith was the superintendent. Collins was also advised, in the same communication, that "it is impossible to comply in full with the decision of the (Railroad Labor) Board to reinstate you to your former position, that is the one held by you prior to May 14, 1921, because that identical position has been abolished by the re-assignment of the yard engines in the Houston yard, but you will be permitted to place yourself in accordance with your desires wherever your seniority will permit."

To said communication Collins, on October 27, 1923, replied that, the identical position having been abolished by reassignment of engines in the Houston yard, his seniority entitled him to be placed on the engine that performs from 8 a. m. to 4 p. m.; Collins also referred to the failure of the vice president and general manager of the company to mention the amount due him in salary, nor when it would be forthcoming in accordance with the decision—No. 1982—of the Labor Board.

This called forth, under date of November 3, 1923, the following reply from the company's vice president and general manager: "According to our understanding of the Decision No. 1982, we are directed to reinstate you to your former position and seniority status. Owing to the hours of the yard engines at Houston at the present time not being the same as they were at the time you were displaced in that yard, our position is that we cannot replace you to the identical position, because it does not exist. However, in accordance with my letter of October 22nd, you will be permitted to place yourself in the Houston yard, or any other yard, in accordance with your desires, wherever your seniority will permit. It is not our intention to pay for the time lost. Yours truly, E. J. Peter, 1st V. P. & General Manager."

Collins then sued the company for $5,786.64

in damages for breach of said contract of employment, covering the time between his taking out of service on May 14, 1921, and the date of his reinstatement; his prayer was that "he have judgment for his damages, for costs of court, and for such and further relief as the plaintiff might be entitled to."

The trial court (a jury having been waived) rendered judgment for Collins in the sum claimed, with legal interest thereon from November 3, 1923 (date of reinstatement), to date of trial (December 10, 1929) and costs of suit, which was affirmed by the Court of Civil Appeals. 35 S.W.(2d) 507, 510.

The contentions of plaintiff in error are:

(1) That the Labor Board's award or decision is neither binding or enforceable, because that body's action is by law only advisory; that the company never agreed to arbitrate the matter in dispute or that the Board might act in that capacity.

(2) That, although illegally displaced at Houston, Collins, in mitigation of damages, should have accepted the offer of another job, which his seniority entitled him to, in either the San Antonio or Kennedy yards, where he would have earned as much as he was then earning in the Houston yard.

(3) That the trial court erred in the allowance of interest on the recovery of damages, from the date of reinstatement to the date of trial, under a prayer for general relief only, the allegation of damages being in a specific amount not sufficiently high to include such interest, and there being no mention of interest either in the body or in the prayer of the petition.

### Opinion.

■■ First. In St. Louis, B. & M. R. Co. v. Booker (Tex. Civ. App.) 5 S.W.(2d) 856, 860 (writs of error and of certiorari, respectively, denied by the Supreme Court of Texas, 117 Tex. 611, and the Supreme Court of the United States, 279 U. S. 852, 49 S. Ct. 348, 73 L. Ed. 995), the facts were that Booker (a car inspector in the company's employ), through his labor organization, entered into contract with the railway company's management by the terms of which no employee would be dismissed from the company's service for any cause, without an investigation, and, if it be then found that the employee had been unfairly discharged or dealt with, such employee should be reinstated with full pay for all time lost. Booker, having been discharged by the company, through the chairman of the grievance committee of his labor organization, complained to the proper authorities of the company, and requested the investigation provided for in the contract. The request was granted, an investigation held by the company's general foreman, and a finding had that Booker was not entitled to reinstatement. Booker appealed from the decision of the general foreman to Mr. Choate, general

manager of the company, who refused to set aside the finding of the general foreman, but did agree to submit the question to the United States Labor Board, by whom it was found that Booker was unjustly discharged and was entitled to reinstatement and pay for all time lost. Upon receipt of a copy of the Labor Board's finding, the company notified Booker to report for work and furnish a statement showing his earnings during the period of his discharge and the amount of pay due him, after deducting such earnings. Booker reported for service, and was reinstated in his former position, but the company refused to pay him the difference between the amounts of money which he would have earned and the amount which he did earn. Booker then filed suit for such amount, and recovered in the trial court; this recovery was affirmed by the Court of Civil Appeals. There, as here, the question of the justness of an employee's discharge must be determined in the manner and as provided in the rules.

The court said in that case:

"When the question reached Mr. Choate, the chief executive officer of the appellant company, if he had simply declined to reverse the finding of his general foreman, the matter would have ended there. But, acting under rule 36, which provides that, 'to the extent that these rules may remain in force after the expiration of federal operation, the methods of procedure will thereafter be such as may be agreed to by the representatives of the organization herein specified,' Mr. Choate did not stand upon the finding of his general foreman, but agreed with Mr. Gray, the representative of appellee's labor organization, to submit the matter to the United States Labor Board at Chicago.

"This submission was made in a manner satisfactory to the parties and sufficient to invoke the jurisdiction and action of the Labor Board. After hearing and investigation by an authorized bureau of the Board, the report or finding of such bureau was duly certified by the Labor Board as its finding. This adjudication by the Labor Board was accepted as final by appellant, and acted on to the extent of reinstating the appellee and calling upon him for an accurate statement of the amount due him for his lost time. It cannot be doubted that, if the decision of the Labor Board had been against appellee he would have been bound thereby, and appellant is equally bound by that decision.

"This is not a suit to enforce an award of the Labor Board in the adjustment by that body of labor disputes and strikes under the authority conferred upon it by the law of its creation, and the holding of the Supreme Court of the United States in the case of Pennsylvania Ry. Co. v. U. S. Railroad Labor Board, 261 U. S. 72, 43 S. Ct. 278, 67 L. Ed. 536, has no application. Appellee's suit is one to recover for breach of a contract of employ-

ment, and the fact that under the contract of employment the finding of the Labor Board upon the issue of the justness of appellee's discharge is conclusive of that issue does not make the suit one to enforce an award of the Labor Board."

It is true that in the Booker Case there was an express agreement by Mr. Choate, the company's general manager, to submit the question to the Labor Board, and in this case the company refused to do so, but, when Collins requested a submission to that Board, the company, being notified, corrected the statement of Collins' representative, and, as found by the trial court, submitted its side of the matter, being represented in person by its general attorney and assistant general manager, the appearance of all parties being voluntary. The company then accepted the terms of the award to the extent of reinstating Collins and refusing only to comply with that part involving the payment of money.

We agree with the Court of Civil Appeals that, in so far as concerns the resulting legal effect, the company's voluntary action in promptly and fully accepting the Labor Board's invitation to appear and submit its defenses in a fully explained prior submission, initiated by Collins, of the whole controversy for adjudication, its appearance before said Board and contest of the matters at issue there, its acceptance of and compliance with the Board's order reinstating Collins, was tantamount to an acquiescence in such submission under consent to be bound thereby, notwithstanding the refusal to pay for time lost.

We think, with the Court of Civil Appeals, that what was done in this instance amounted to the same thing in ultimate result as a prior agreement to submit the controversy to the Labor Board and abide by its decision; the company's refusal to agree in advance became immaterial under the circumstances.

In Virginian R. Co. v. Chambers, 46 F.(2d) 20, 23, the Circuit Court of Appeals for the Fourth Circuit disposes of the proposition that there is no constraint upon the parties to do what the Labor Board may decide they should do, except the moral constraint of publication of its decision, and that the award is not binding upon any of the parties, by saying, "We do not think that the award is any evidence against the parties to establish the facts which the award found, in the absence of a previous agreement or subsequent ratification. * * * But although the Labor Board has no power to make a binding award, nevertheless the parties may accept or ratify the award, and it then becomes binding. Here, the defendant accepted the award, so notified the plaintiffs in writing and received all the benefits which might accrue to it from public opinion by its acceptance of the board's decision. The plaintiffs also accepted and, in compliance with the terms of the defendant's

acceptance, reported for duty and rendered the sworn statements of their earnings as required by the defendant's letter to them. This action of the parties in ratifying the award made a complete and binding contract, as fully as if they had agreed in advance to be bound by the board's decision."

The case reached the Supreme Court of the United States, and the judgment "was affirmed by a divided court" as shown by a per curiam decision. 284 U. S. 577, 52 S. Ct. 27, 76 L. Ed. 501.

In Hoey v. New Orleans G. N. R. Co., 159 La. 258, 105 So. 310, 311, 47 L. R. A. 832, the Supreme Court of Louisiana had under consideration the summary discharge of an employee contrary to the contract between his labor union and the company which provided that no employee may be discharged without a hearing, which resulted in an appeal to and award by the United States Railroad Labor Board that the employee be reinstated with seniority rights unimpaired, and paid for all time lost, less any amount he may have earned in other employment. The trial court dismissed the suit on an exception of no right or cause of action, embracing the following: "That the Transportation Act of 1920, under which the Labor Board was empowered to act in the matter, does not provide any means for the enforcement of its decision; nor does it give either of the parties the right to enforce the decree in the courts or otherwise."

The Supreme Court reversed the trial court on this point, because the company acquiesced in the decision of the Board by ordering the employee to report to work at once.

This case is, as we view it, not one upon, and to enforce as such, a decision of the Labor Board, but is one for breach of the contract of employment declared upon, in which the award of the Labor Board as to its consequences under the facts shown was in effect accepted as final and binding.

■■ Second. We are cited to no case, nor have we found any, holding that a wrongfully discharged employee, unable to obtain other employment in one place, must in mitigation of damages seek or accept employment elsewhere in a distant locality.

In a New York case, Costigan v. Mohawk & H. R. R. R. Co., 2 Denio, 609, 43 Am. Dec. 758, the court said that, had it been shown that employment of the same general nature and description with that which the contract between the parties contemplated had been offered to the plaintiff and been refused by him, that might have furnished a ground for reducing the recovery below the stipulated amount; but it should have been business of the same character and description and to be carried on in the same region; the discharged employee could not be required to leave his home and place of residence, to engage in business, although of the same character with that in which he had been employed, for the purpose of reducing the recovery.

That is in accord with the editor's conclusion (6 L. R. A. [N. S.] 121), annotating Howay v. Going-Northrup Co., as follows: "The damages in an action for breach of a contract of employment, however, are always subject to mitigation by the amount realized, or which might have been realized, from other employment engaged in, or other similar employment in the same locality engaged in, or which might, with reasonable diligence, have been engaged in, during the balance of the contract period of employment."

To the same effect see 18 R. C. L. p. 529, § 39.

The rule in this state is that an employee wrongfully discharged must use reasonable diligence to obtain other employment and to reduce his loss as far as can thus be done, and, if no other employment can be obtained by reasonable diligence, proof of that fact will meet every requirement of the law (Kramer v. Wolf Cigar Stores Co., 99 Tex. 597, 91 S. W. 775); the character of employment being another position of substantially the same position, status, capacity, or grade, failing to secure which, other employment for which he is fitted. Simon v. Allen, 76 Tex. 399, 13 S. W. 296. If no employment of the defined character can be had by the diligence required, then the damages are not mitigated. Kramer v. Wolf Cigar Stores Co., supra.

We think Collins satisfied the obligation under which he rested to lessen his damages by making a reasonable effort to secure other employment at Houston; and his refusal to accept employment at distant places, involving change of residence and loss of position and seniority in the Houston yards, was within his rights under the contract.

We agree with the Court of Civil Appeals in the conclusion that the real issue determined before the Board was that Collins' dismissal "had been unjust, whereupon the consequent determination that appellee should both be reinstated and paid for all time lost— less what he may have earned in the interval in other employment—which the undisputed evidence showed was nothing, was but declaratory of its terms. Under that instrument the appellee was a switchman in the yards of appellant at Houston, with his seniority rights in that position there expressly provided for and preserved; hence it was neither a job of exactly the same or a similar nature for the employer—after displacing him there by a younger man, as the trial court found—to offer him a switchman's place at either Kennedy or San Antonio, Tex.; and this, by the undisputed proof, was not only all that was ever tendered to him, but it would have deprived him both of the position and seniority in the Houston yards the contract called for; he was not required to condone by acceptance

thereof such a direct violation of his contractual rights and privileges."

**Third.** A suit of this character is one for damages, regardless of the fact that the amount of wages laid down in the contract may sometimes constitute the measure of recovery.

In Litchenstein v. Brooks, 75 Tex. 196, 12 S. W. 975, discussing the remedy for breach of a contract for hire, the court said: "When the contract is broken without fault of one party, his cause of action is not for the wages contracted for, but it is for the damages for the breach of the contract. His right to recover the loss occasioned by the breach, not exceeding the contract price, arises at once," affirming the rule announced in Meade v. Rutledge, 11 Tex. 44, and Hassell v. Nutt, 14 Tex. 260.

The suit being, not on the contract, because no labor was performed, but for damages because of its breach, the Court of Civil Appeals therefore erred in holding that this suit comes within the terms of article 5070, Rev. Stat. 1925, and interest should be allowed as a matter of legal right, although not alleged or prayed for, under a prayer for general relief.

We think that interest to be recovered in a suit for damages must be specially pleaded, either as a separate item of damages or the damages must be laid in the petition in such an amount as may indicate that interest is sued for. Interest cannot be recovered in a suit for damages under a prayer for general relief, unless specially pleaded or included in the prayer. As said in West Lumber Co. v. Henderson (Tex. Com. App.) 252 S. W. 1044, 1046: "The interest item in question should either have been specially claimed and sued for, or the allegations should have so been made that the inference would arise that interest was being claimed. Certainly, in the case at bar, there was no special prayer for interest. The word is nowhere mentioned. Nor is anything alleged from which it could possibly be implied that a recovery of such interest was being sought."

Here the specific and only sum sued for is $5,786.64, as damages, based upon the allegation that plaintiff, if not unlawfully discharged, could have worked 893 days at a wage of $6.46 per day; the prayer being "that he have judgment for his damages, for costs of court, and for such and further relief as the plaintiff might be entitled."

A prayer for general relief will not authorize a judgment inconsistent with the specific relief sought. West Lumber Co. v. Henderson (Tex. Com. App.) 252 S. W. 1044; City of San Antonio v. Pfeiffer (Tex. Civ. App.) 216 S. W. 207; St. Louis S. W. R. Co. v. Starks (Tex. Civ. App.) 109 S. W. 1003.

The rule announced in 13 Tex. Jur. p. 331, supported by the authorities, is: "While interest upon the amount of damages found may be allowed by way of indemnification in a proper case, a claim in this respect, in order that a recovery may be sustained, must have its basis in the pleadings. Interest must be asked for specifically or be embraced in the aggregate amount laid as damages. Where there is neither a prayer for interest, nor a claim for damages in such sum as to include the interest in addition to the specific damages claimed, interest may not be allowed."

And, where damages are claimed in the amount of a named sum, and loss in that amount is proved and verdict rendered therefor, interest cannot properly be added under a prayer for general relief. San Antonio & A. P. R. Co. v. Addison, 96 Tex. 61, 70 S. W. 200.

We have concluded that the trial court erred in allowing a recovery for interest from November 3, 1923, to the date of trial, and the Court of Civil Appeals erred in affirming same in that respect, and recommend that said judgments be modified to the extent of denying such recovery for such interest, and, as so modified, said judgments below be affirmed.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reformed, and, as reformed, affirmed, as recommended by the Commission of Appeals.