CHARLES F. HOLLWEDEL, Respondent, v. DUFFY-MOTT COMPANY, INC., Appellant.

(Argued October 18, 1933; decided November 21, 1933.)

*Louis S. Weiss* and *Myer D. Mermin* for appellant. As matter of law, the agreement does not constitute a term employment contract; the complaint, therefore, fails to state a cause of action and should have been dismissed. (*Rhinelander* v. *Farmers' Loan & Trust Co.*, 172 N. Y. 519; *Zorkowski* v. *Astor*, 156 N. Y. 393; *Hornbostel* v. *Kinney*, 110 N. Y. 94; *Hudson Canal Co.* v. *Penn. Coal Co.*, 8 Wall. [U. S.] 276; *French & Co.* v. *Leeston Shipping Co.*, [1922] 1 A. C. 451; *King* v. *Leighton*, 100 N. Y. 386; *Bruce* v. *Fulton Nat. Bank*, 79 N. Y. 154; *Assets Realization Co.* v. *Howard*, 211 N. Y. 430; *Booth* v. *Cleveland Mill Co.*, 74 N. Y. 15; *Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519; *Paige* v. *Faure*, 229 N. Y. 114; *Watson* v. *Gugino*, 204 N. Y. 535; *Martin* v. *Ins. Co.*, 148 N. Y. 117; *Higgins* v. *Applebaum*, 186 App. Div. 682; *Wightman* v. *New York Life Ins. Co.*, 119 App. Div. 496.) The verdict rendered by the jury was excessive in that, under erroneous instructions from the trial court, there was permitted to be included in the amount of the verdict interest on the total principal of the damages found from the date of the alleged breach of contract to the alleged date of termination of the contract; the successive reductions in the verdict by the courts below have not eliminated the excess erroneously awarded. (*Johnson* v. *Blaney*, 198 N. Y. 312; *Bishop* v. *Autographic Register Co.*, 19 App. Div. 268; 165 N. Y. 662; *Denike* v.

*Denike,* 8 Misc. Rep. 604; 155 N. Y. 671; *Crawford* v. *Mail & Express Pub. Co.,* 22 App. Div. 54; 163 N. Y. 404; *Hoisting Machinery Co.* v. *Federal Terra Cotta Co.,* 179 App. Div. 653; 228 N. Y. 569; *Bishop* v. *New York Times Co.,* 233 N. Y. 446; *Hoffer* v. *Hooven, Owens, Rentschler Co.,* 192 App. Div. 138; *Jones* v. *N. Y. C. & H. R. R. R. Co.,* 144 App. Div. 55; *Mayaguez Drug Co.* v. *Globe & Rutgers Fire Ins. Co.,* 260 N. Y. 356; *Webber* v. *Reynolds,* 32 App. Div. 248; *Riker* v. *Gwynne,* 201 N. Y. 143; *Duclos* v. *Kelley,* 197 N. Y. 76; *Dixon* v. *James,* 181 N. Y. 129; *Matter of Chapman,* 162 N. Y. 456; *Baer* v. *Durham Duplex Razor Co.,* 228 App. Div. 350; 254 N. Y. 570; *Bondy* v. *Harvey,* 218 App. Div. 126; *Nichols* v. *Scranton Steel Co.,* 137 N. Y. 471; *Schell* v. *Plumb,* 55 N. Y. 592; *Goodsell* v. *Western Union Telegraph Co.,* 21 J. & S. 46; 109 N. Y. 147; *People* v. *Security Life Ins. & Annuity Co.,* 78 N. Y. 114; *Puller* v. *Royal Casualty Co.,* 271 Mo. 369; *Yelland's Case,* L. R. 4 Eq. 350; *Moore* v. *Central Foundry Co.,* 68 N. J. L. 14.)

*Gustave Lange, Jr., Charles B. Bechtold* and *Albert Von Wiegan* for respondent. The contract was one of employment for a period of ten years. (*Moran* v. *Standard Oil Co.,* 211 N. Y. 187; *Grossman* v. *Schenker,* 206 N. Y. 466; *Wood* v. *Duff-Gordon,* 222 N. Y. 88; *McCall* v. *Wright,* 133 App. Div. 62; 198 N. Y. 143; *Vogel* v. *Pathe Exchange, Inc.,* 234 App. Div. 313; *Madison Square Garden Corp.* v. *Canera,* 52 Fed. Rep. [2d] 47; *Studner* v. *H. & N. Carburetor Co.,* 185 App. Div. 131; 230 N. Y. 534; *Griffin* v. *Brooklyn Ball Club,* 68 App. Div. 566; 174 N. Y. 535; *Gutner* v. *Success Magazine Corp.,* 136 Misc. Rep. 257; *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310.) The damages of a plaintiff in an action for wrongful discharge are *prima facie* the amount of wages or compensation stipulated to be paid, and the burden rests upon the defendant in such an action to establish by evidence of probative force any amount in mitigation of damages. (*McClelland* v. *Climax Hosiery*

*Mills*, 252 N. Y. 347; 253 N. Y. 533; *Milage* v. *Woodward*, 186 N. Y. 252; *Davis* v. *Dodge*, 126 App. Div. 469; *Allen* v. *Glen Creamery Co.*, 101 App. Div. 306; *Howard* v. *Daly*, 61 N. Y. 362; *Ware Brothers Co.* v. *Cortland Cart & Carriage Co.*, 192 N. Y. 439; *Griffin* v. *Brooklyn Ball Club*, 68 App. Div. 566; 174 N. Y. 535; *Carvill* v. *Mirror Films, Inc.*, 178 App. Div. 644; 226 N. Y. 683; *Vogel* v. *Pathe Exchange, Inc.*, 234 App. Div. 313; *Deniston* v. *Finnegan*, 174 App. Div. 8; *Cottone* v. *Murray's*, 138 App. Div. 874.)

LEHMAN, J.   In September, 1929, the plaintiff entered the employment of the defendant corporation at an annual salary of $12,000.   He was discharged in October, 1930. Claiming that the defendant had agreed in writing to retain him as manager for a period of ten years, the plaintiff brought this action to recover damages for his wrongful discharge.

The agreement fixing the terms and conditions of the plaintiff's employment is embodied in a tripartite written contract whereby Standard Apple Products Co., Inc., agreed to sell its property, good will and business to the defendant corporation, and the plaintiff, who was the owner of substantially all the common stock, and had been the manager of the vendor corporation, covenanted that " he will not, for the period of ten years from the date hereof, directly or indirectly  *  *  *  engage in any business  *  *  *  having to do with the purchase and sale of apples or of any apple products," etc.   The provisions for the plaintiff's employment are intertwined with this covenant.   In consideration of that covenant, the defendant corporation agreed that if it " fails, without good and sufficient cause  *  *  *  during the term of this agreement, to retain the party of the second part (the plaintiff) as one of its managers  *  *  *  then this stipulation, covenant and agreement on the part of the party of the second part is to be of no further force and effect."

Here there is no express agreement by the defendant to retain the plaintiff in its employ during the period of the contract. Literally the defendant has agreed only that if it fails to retain the plaintiff as manager, then the plaintiff's agreement not to engage in a competing business should terminate. The defendant contends that the plaintiff's employment was, subject to this condition, only at will, and might be terminated without a breach of contract.

If there were nothing else in the written contract the defendant's contention would have great force. These provisions must, however, be read with the clauses immediately following. "It being understood that it is the express intention of the parties hereto that the said party of the second part (the plaintiff) will become and *remain* a manager of the party of the first part, and that the party of the first part (the defendant) would not enter into the arrangement with Standard Apple Products, Inc., were it not for such expectation, and that the party of the second part would not enter into this covenant were he not *assured that he would become and remain* a manager of the party of the first part at a remuneration figured during the term of this agreement as above referred to." That "express intention" might be frustrated and the assurance given to the plaintiff might be defeated unless the plaintiff bound himself to remain as manager and the defendant bound itself to retain him in that capacity for the period of the contract. An agreement that each should be so bound is implicit in these provisions read in the light of the circumstances surrounding the making of the contract. At least the trier of the fact might so hold.

The jury has determined all contested questions of fact in plaintiff's favor and brought in a verdict for him in the sum of $118,762.53, which was reduced by the trial judge to the sum of $113,484.75 and further reduced by the Appellate Division to the sum of $88,752.78.

Except for erroneous rulings which permitted the jury to find damages which are clearly excessive, we should be constrained to affirm the judgment.

The plaintiff is entitled to damages which will compensate him for the defendant's breach of contract. *Prima facie* the measure of such damage is " the wage that would be payable during the remainder of the term;" but this is only the *prima facie* measure. The actual damage is measured by the wage that would be payable during the remainder of the term reduced by the income which the discharged employee has earned, will earn, or could with reasonable diligence earn during the unexpired term. (*McClelland* v. *Climax Hosiery Mills*, 252 N. Y. 347, 358.)

The wage that would be payable under the contract of employment after the discharge, during the unexpired term, amounts to $106,900. At the time of the trial the plaintiff had concededly earned the sum of $5,800 which the trial judge properly charged must be deducted from the unpaid wages. Almost seven years of the term of the contract was still unexpired at that time and from the evidence presented at the trial the jury might well find with reasonable degree of certainty that the plaintiff would earn a substantial sum of money during that unexpired term. Under instructions from the trial judge the jury was permitted to fix the amount of such probable earnings. Though that amount could not be fixed with absolute certainty, the evidence was certainly sufficient to enable the jury to determine the sum that should be allowed as a deduction. Their verdict shows on its face that the damages were calculated on an erroneous basis, for the sum awarded is greater by about $12,000 than the total amount of unpaid wages, though some of those wages would not have been payable till nine years after the breach and though the plaintiff had earned a substantial sum of money before the date of the trial.

Upon a motion to set aside the verdict the defendant

presented an affidavit of a juror showing how the jury calculated the damages. The trial judge ruled that this affidavit was incompetent. We need not consider whether that ruling was correct, for even without the affidavit it is quite apparent how the calculation was made. At the trial the plaintiff was permitted, over defendant's objection and exception, to show that interest at six per cent on the unpaid wage, calculated to the *date of the expiration of the contract* seven years after the trial, would amount to the sum of $52,662.53. Of course under no possible theory could the plaintiff be entitled to an acceleration of the date when payment of wage would have become due and interest for the unexpired term. Doubtless the ruling of the trial judge was made through inadvertence, but the error was not corrected at the trial and was emphasized by the charge, in which the jury was informed that the plaintiff's claim was for salary of $106,900 due him under the contract, less the sum of $5,800 which he had earned up to the date of the trial, to which interest in the amount of $52,662.53 should be added, making a total claim of $153,762.53. These figures were fixed and could not be varied, except that, as the trial judge charged, the amount that the plaintiff " may reasonably be expected to earn during the balance of this term of employment " must be deducted in fixing the damages. That was the only uncertain factor in the measure of damages as charged by the trial court, and when the jury brought in a verdict for $118,762.53, exactly $35,000 less than the $153,762.53 claimed by the plaintiff, it is evident that the jury fixed the plaintiff's prospective earnings at $35,000.

Upon the motion to set aside the verdict, the trial judge recognized that the calculation of interest was entirely erroneous, and he reduced the damages to the amount claimed by the plaintiff for unpaid salary of $106,900 less the sum of $5,800 concededly earned to the date of the trial. These constituted, so he held, the

damages suffered by the plaintiff, and to this was added interest from the date of the breach to the date of trial, in accordance with the provisions of section 480 of the Civil Practice Act, making a total of $113,484.75. The plaintiff, to avoid a new trial, stipulated to reduce the judgment to that amount. The judgment entered on that consent makes no allowance for future earnings and no allowance for the element of futurity in the installments of salary which under the contract were payable after the breach.

The discharge of the plaintiff, though wrongful, did not accelerate the due date of the salary payable during the remainder of the contract term. The defendant's breach did not give the plaintiff a right of action to recover the unpaid installments before they were payable, but only a right of action for such damages " as would have arisen from the nonperformance of the contract at the prescribed time." (*Frost* v. *Knight*, 26 L. T. Rep. 77, 79; cited with approval in *Howard* v. *Daly*, 61 N. Y. 362, 377, where it was said that the plaintiff's " action was for damages for not being permitted to work, and not for wages.") True, in that case, as in other similar cases, it was said that in the absence of affirmative proof that the discharged employee could have obtained employment elsewhere, " she was entitled to recover the full amount stipulated in the contract," but there the term of employment was brief and had expired before the trial. Quite evidently a discharged employee obtains more than compensatory damages for " not being permitted to work," if he receives the full compensation which would have been payable only in installments over a long period of years, and in addition interest on such installments from the date of the breach in accordance with section 480 of the Civil Practice Act.

In determining the damages suffered through repudiation by the vendee of a contract of purchase and sale, this court has said: " The plaintiff does not recover the

moneys as being the contract price strictly and technically, but as damages for the breach of the contract by the defendant. And those damages would be the present worth of the moneys payable under the contract at the time therein provided. Thus if the moneys were to be due at the end of four months from the time when the iron was, by the terms of the contract, to be delivered, the measure of damages would be, in such case, the present worth of an obligation to pay money due at such a certain time." (*Nichols* v. *Scranton Steel Co.*, 137 N. Y. 471, 487.) The same rule must, in principle, apply to damages for breach of contract of employment. The discharged employee's damages may be measured *prima facie* by the unpaid wage, but it is the present worth of the obligation to pay the wages at a time in the future that fixes the damages. Indeed, in the case of breach of contract of employment, not only time but the uncertainty of human life may be taken into consideration in fixing the present worth of an obligation to pay money due at some time in the future, after the trial.

Such factors have been of little consequence in most of the cases for breach of contract of employment for a fixed term, and ordinarily have, therefore, been disregarded. Usually the period of employment has expired before trial. Until interest was added to unliquidated damages from the date of breach to the time of trial (Civ. Prac. Act, § 480), error in allowing as damages the full amount of an obligation to pay wages due between the date of breach and the date of trial, rather than its value at the time of the breach, was not so readily apparent and, indeed, ordinarily was not unjust. Though, perhaps for that reason, this court has never heretofore directly passed upon the point, the rule that future payments should be appraised at present value has been applied in determining damages for breach of contracts of employment in other jurisdictions. (Cf. *Yelland's Case*, L. R. 4 Eq. 350; *Puller* v. *Royal Casualty Co.*, 271 Mo. 369;

Ransome Concrete Machinery Co. v. Moody, 282 Fed. Rep. 29.)

At times, of course, practical difficulties must arise in the application of the rule. Damages caused by loss of opportunity to earn wages payable at a future time are from their nature uncertain. Where the trial is held after the expiration of the term of employment, what was uncertain at the time of the breach may have become capable of accurate calculation. The uncertainties still remain as to the part of the term, unexpired at the time of the trial. The jury should make such allowance as the proof in each case justifies, for probable future earnings of the discharged employee, and for contingencies affecting the employment. Their task would become almost impossibly difficult if they were required to determine the present value of each future payment after fixing the uncertain deductions to be made from each payment. Though they must make due allowance for the difference between the value of future payments, they cannot be required to make apportionment of uncertain deductions against each payment or to apply with exactitude tables of six per cent discount to uncertain sums. All that can be required of them is to pass upon the evidence and to make reasonable allowance for each factor entering into the determination of the entire damage.

The Appellate Division has held that the future payments should be discounted to their value at the time of the breach. From that value they deducted only the amount concededly earned by the plaintiff and on condition that plaintiff stipulate to accept the modification, they affirmed the judgment as modified. In that they erred. The damages thus recovered were, so the Appellate Division said, " the *maximum* amount of the damages recoverable under the evidence." (238 App. Div. 468, 471.) Thus they eliminated the allowance of $35,000 which the jury might have found, and, as appears,

did find, upon the evidence, represented the probable earnings of the plaintiff during the part of the term which had not expired at the time of the trial. An appellate court may correct errors due to erroneous rulings, but it cannot usurp the province of a jury nor upon the consent of the plaintiff reduce a judgment to the " *maximum* " amount recoverable by the plaintiff under the evidence, unless the jury verdict has established such amount.

The only erroneous ruling of the trial judge to which exception was duly taken consisted, as we have said, in permitting the jury to include in their verdict *interest* upon installments of salary to the amount of $52,662.53. The court was bound to correct the effect of that error and grant a new trial, unless the plaintiff stipulated to consent to the entry of a judgment modified by the excision of the interest erroneously included. The Appellate Division might also in the exercise of its discretion under its power to pass upon the facts have, even without exception, passed upon the correct measure of damages. Having done so, we have considered its ruling upon that question. The result is that upon a new trial in accordance with the rules stated in the opinions of the Appellate Division and in this opinion, the plaintiff might recover an amount materially less than that fixed by the judgment as modified by the Appellate Division. No new trial is, however, necessary in order to determine the amount of the judgment to which the plaintiff would be entitled, for the jury has passed upon all substantial questions of fact.

The jury has fixed the amount of the probable future earnings of the plaintiff at the sum of $35,000. That sum, together with the amount concededly earned by the plaintiff, must be deducted from the salary payable under the contract of employment. Then allowance must be made for discount of salary less the amount of actual or prospective earnings. If the earnings were equally apportioned against monthly salary, the amount

of the discount would be only a matter of mathematical calculation. At six per cent discount, the damages to which the plaintiff would then be entitled as of the date of the breach would be $53,665.82, which with interest to the date of trial would amount to $60,364.45. They might be a little greater if the apportionment were made differently or if a lower rate of discount were adopted. They could not be substantially larger. Thus the rights of both parties are fully protected if we grant a new trial, unless the plaintiff stipulates to reduce the verdict as of the date of rendition to the sum of $60,364.45.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event, unless the plaintiff shall stipulate, within ten days, to reduce the verdict to the sum of $60,364.45, in which event the judgment should be modified accordingly, and as so modified affirmed, without costs.

POUND, Ch. J., CRANE, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.