**MR. EDDIE, INC., Mr. Clark, Inc., and
Morty Freedman, Appellants,**

v.

**Jack GINSBERG, Appellee.**

**No. 4210.**

Court of Civil Appeals of Texas.
Eastland.

June 14, 1968.

Rehearing Denied July 12, 1968.

Clark, West, Keller, Clark & Ginsberg, Jack D. Eades, Dallas, for appellants.

Haynes & Fullenweider, Donn C. Fullenweider, Houston, for appellee.

COLLINGS, Justice.

Jack Ginsberg brought suit against Mr. Eddie, Inc., Mr. Clark, Inc., and Morty Freedman for an alleged breach of a written contract of employment. Based upon jury findings, judgment was rendered for Ginsberg, in the sum of $90,962.93. The defendants have appealed.

The record shows that appellee Jack Ginsberg was a highly skilled production manager in the ladies ready to wear industry with over 40 years experience; that he began work for appellants under a one year contract beginning September 1, 1964. On June 30, 1965, appellee and appellants entered into a written contract whereby appellee was employed for a three year period to begin on September 1, 1965. Appellee's salary as provided in the contract was $700.00 per week. Morty Freedman signed the contract as president of the corporate defendants and as an individual guarantor for such defendants. The evidence indicates that under the first contract Ginsberg's work was completely satisfactory. Ginsberg testified that he first noticed a change in Freedman's attitude toward him on July 29, 1965; that such change in attitude continued until October 16, 1965, when Freedman told him he was going to let him go and that he was employing Phil Clemente to take over the job. Prior thereto on July 12, 1965, Freedman had told Ginsberg that Clemente was leaving his then employer, Justin McCarty. After discharge of Ginsberg on October 16, 1965, Clemente on October 18, 1965, began work for appellants. The evidence indicates that the position of production manager in the ladies ready to wear business requires high skill, and such positions are very limited in the Dallas area.

At the time of his discharge appellee Ginsberg was sixty-five years of age. On November 24, 1965, appellee secured employment with Justin McCarty Company as a production manager at a salary of $400.00 per week. He retained that employment for 34 weeks, until July 18, 1966, and during that period received a total salary of $13,760.00. The president of Justin McCarty asked appellee to train an understudy for his position and contemplated paying $300.00 per week for such an employee. Advertisements were made under appellee's name for an understudy. Appellee testified in this connection that he would have agreed to break in an understudy for Justin McCarty and teach him the business but that he desired some security and felt that if he continued under the proposed arrangement there should be a contractual relationship between him and Justin McCarty covering a substantial time. He testified that they discussed the matter but could reach no agreement; that when they were unable to reach an agreement which guaranteed him security he left such employment. Appellee further testified that after leaving the Justin McCarty Company and prior to the date of the trial on March 8, 1967, he wrote over 150 letters to answer advertisements and contact prospective employers. He placed several advertisements in newspapers seeking a job, but only two people contacted by him actually discussed the matter of his employment. He stated that in the letters he wrote he told of his experience and the salary he would be willing to take; that he sought a "nominal" salary of $500.00 per week and a percent of the profits before taxes. He did not get any responses to the letters or adverise-

ments. He testified that he had not been able to find a "position that's suitable" and that he would call a position suitable where he could earn, as a production manufacturer, thirty five to fifty thousand per year but would consider any offer for a job. He testified that he knew all phases of the ladies ready to wear business from 40 years experience and did not think he was pricing himself out of the market by setting the salary too high for the demand.

In connection with the effort made by appellee to secure employment the evidence shows that he went to a merchandise mart meeting where ninety five percent of the manufacturers showed their lines but he could find no one interested in his services; that he ran an advertisement for eight days in the Womens' Wear Daily, answered every advertisement that appeared in the Womens' Wear Daily, the Wall Street Journal, the Dallas Times Herald, the Dallas News and paid extra to have the Womens' Wear Daily specially delivered to him; that he had a résumé prepared and sent to prospective employers in response to advertisements, notified all prospective employers that he would relocate anywhere in the world and made job applications for employment in Germany, Israel and Greece; that he listed his availability with employment agencies, made trips to New York and Houston seeking employment and incurred $1,340.36 expense seeking other employment. Appellee testified that he would consider anything. At the trial he testified that he was willing to return to work for Freedman that day and continue to work under the contract.

It was found by the jury that Morty Freedman discharged appellee on October 16, 1965, that the discharge was without good cause, that appellee did not by his course of conduct lead appellants to believe that he was quitting, that in the exercise of reasonable diligence appellee could have earned $10,800.00 in other employment above necessary expenses from October 16, 1965 until March 8, 1967, and that from March 9, 1967 until August 31, 1968, ap-

pellee, in the exercise of reasonable diligence could have earned nothing in other employment.

Appellants filed motions to disregard jury findings and to declare a mistrial, and filed a motion for judgment non obstante veredicto. These motions were overruled. The judgment for $90,962.93 ignored the jury finding that appellee could have earned only $10,800.00 above necessary expenses from October 16, 1965 to March 8, 1967. The amount of the judgment was computed by or based upon a consideration of a $700.00 weekly salary from October 16, 1965 to the time of the trial, amounting to $50,800.00, less the $13,760.00 actually earned by appellee from Justin McCarty, plus expenses and 6% interest during that period, and a $700.00 weekly salary to be earned by appellee from March 9, 1967 to the end of the three year contract on August 31, 1968, amounting to $54,200.00, less 6% discount for the time involved. The judgment also included expenses incurred by appellee in seeking other employment.

In appellants' first group of points it is contended in substance that the court erred in rendering judgment for appellee because the award of damages in the sum of $90,962.93 disregards the undisputed evidence that appellee, after voluntarily leaving his employment with Justin McCarty, failed to mitigate his damages, in that, (1) he failed to seek other similar employment, (2) failed to seek other employment of any kind and, (3) although qualified to work in many other positions in the clothing industry, only sought employment as a production manager in dress factories, (4) that such judgment erroneously substituted a finding of fact by the court of the amount of money appellee could have earned in other employment above all necessary expenses, contrary to the findings of the jury in answer to special issue number 6; that the court erred in overruling appellants' motion for judgment non obstante veredicto, (5) and (6) because the undisputed evidence showed that appellee failed to mitigate his damages, in that, he rejected other

similar employment with Justin McCarty and that, as a matter of law, his loss was a result of his own action; that the court erred in overruling appellants' motion to declare a mistrial because (7) there was no evidence to support the finding of the jury in answer to special issue number 6 to the effect that appellee, in the exercise of reasonable diligence, from October 16, 1965 until March 8, 1967 could have earned only $10,800.00 when (8) the undisputed evidence showed that during that period appellee actually earned with Justin McCarty the sum of $13,760.00, and (9) there was no evidence to support the finding in answer to special issue number 7 that from March 9, 1967 until August 31, 1968, appellee earned "0 dollars."

■ The general rule is, as appellants contend, that an employee who has been wrongfully discharged and seeks to recover damages therefore cannot recover for losses which in the exercise of reasonable diligence he could have avoided. Dixie Glass Co. v. Pollak, 341 S.W.2d 530, 91 A.L.R.2d 662, (Tex.Civ.App., 1960, writ ref., 162 Tex. 440, 347 S.W.2d 596).

In Restatement of Contracts, Sec. 336, it is stated as follows:

"Sec. 336. Avoidable Harm; Losses Incurred in Efforts to Avoid Them.

'(1) Damages are not recoverable for harm that the plaintiff should have foreseen and could have avoided by reasonable effort without undue risk, expense, or humiliation.' "

In 17 Tex.Jur.2d page 119, it is stated:

"The general rule is that an employee who has been wrongfully discharged before the termination of his contract of employment must endeavor to reduce the loss or damage by seeking other employment. In a suit for the breach of such a contract the employer is entitled to have the recovery reduced by so much as the employee earned or by the exercise or ordinary diligence could have earned in other employment."

■ Unquestionably Ginsberg had the duty to use reasonable diligence to mitigate his damages by seeking other employment. In this connection, appellants had the burden to show the amount appellee earned, or could have earned, during the period in question. Pacific Express Co. v. Walters, 42 Tex.Civ.App. 355, 93 S.W. 496, (1906, writ ref.); Morgan v. Young, 203 S.W.2d 837, (Tex.Civ.App., 1947, Ref. n. r. e.). Appellants contend that the evidence is undisputed and conclusive that appellee failed to mitigate his damages except for the amount he earned with Justin McCarty Company; that he secured other similar employment with Justin McCarty at $400.00 per week and appellants contend could have continued working there at that rate during the entire remaining period of the contract but that he neglected and voluntarily refused to do so; that such amount should be deducted from his recovery.

■ Ginsberg did secure employment with Justin McCarty, but at a smaller salary than he was entitled to receive under his contract with appellants. The evidence also supports the conclusion that such employment was not secure. Justin McCarty was at the time searching for a man to fill their position at a smaller rate of pay and wanted appellee to train him. Appellee had the right and the duty to earn as much as he could during the remaining period of his contract with appellants and to thereby mitigate his damages. There was ample evidence, as hereinabove set out, showing that appellee did seek to mitigate his damages; that he diligently sought to find other employment, and particularly sought similar employment. He wrote many letters, advertised in newspapers and trade publications and spent more than $1,000.00 in such efforts. The fact that he was not successful and might have earned more by remaining with Justin McCarty is not controlling. Even if the evidence had shown that he could have done so, Ginsberg was not required to enter into a permanent contract with another employer, which would have prevented him from resuming his work with

appellants. Pacific Express Company v. Walters, supra. Ginsberg testified at the trial that he would return to work for Morty Freedman that day. He stated that he had received no offer of a job at any price other than the temporary work he had with Justin McCarty. He said that he would consider any offer to work but had received none. The question is whether a consideration of all the facts and circumstances support the conclusion that he used reasonable diligence in seeking to mitigate his damages. In our opinion the evidence does support that conclusion. Appellants' contention to the contrary is not well taken.

In numerous points appellants contend that appellee's pleadings and evidence do not support the jury findings in answer to special issues numbers 1 and 2 to the effect that Ginsberg (1) was discharged by Freedman, and (2) that he was discharged by the defendants without good cause. Ginsberg alleged in his pleadings that Freedman, in his own right and as agent of Mr. Eddie, Inc., and Mr. Clark, Inc., fired him. Contrary to appellants' contention, such pleading was sufficient to raise the issue of Freedman's authority to act for Mr. Eddie, Inc., and Mr. Clark, Inc. 14 Tex.Jur.2d, Corporations, Section 353, page 457. Appellants particularly contend that there was no evidence concerning the authority or duty of Freedman relative to the hiring or firing of employees of the corporate appellants, Mr. Eddie, Inc., and Mr. Clark, Inc. These points are overruled. Concerning the authority of Freedman to act for the corporate appellants in discharging Ginsberg, appellants' pleadings do not deny the authority of Freedman. In the absence of such a pleading by the corporate appellants a defense on that ground was not available to them. Art. 2.04, Texas Business Corporation Act, V.A.T.S.; 14 Tex. Jur.2d, Corporations, Sec. 353, pg. 457.

Although there was evidence to the contrary, there was ample evidence that Ginsberg was discharged by Freedman, and without good cause. There was evidence that Freedman in so doing had full authority to act for appellants, Mr. Eddie, Inc., and Mr. Clark, Inc. The contract of employment shows that Freedman was President of Mr. Eddie, Inc., and Mr. Clark, Inc.; that he executed the contract on behalf of himself and the corporations and that he, individually, guaranteed the performance of the corporations. It is a well settled general rule that the president of a corporation has authority to hire and discharge employees. Lee v. Jenkins Brothers, 268 F.2d 357, (2 Cir. 1959). The evidence also shows that Freedman was a principal shareholder of the corporations and actually engaged in their business as general manager. A general manager ordinarily has the power to hire and fire employees. 14 Tex.Jur.2d Corporations, Sections 330, 334. The evidence shows that Freedman acted not only for himself but also for such corporate appellants in visiting their various plants, supervising the business and sales force and hiring and discharging employees.

It was found by the jury in answer to special issue number 2 that Ginsberg was discharged by appellants without good cause. In connection with that issue the court instructed the jury:

"—that by 'good cause' for discharge is meant a failure of an employee to perform those duties in the scope of his employment as a man of ordinary prudence in an industry would have done under the same or similar circumstances, or the commission of acts by the employee in the scope of his employment which a man of ordinary prudence would not have done under the same or similar circumstances."

In numerous points appellants contend the court erred in submitting issue number 2, asserting that it was a comment on the weight of the evidence; that there was no evidence and insufficient evidence to support submission of said issue. These points are overruled. The issue was not a comment on the weight of the evidence. As heretofore noted, there was ample evi-

dence to support submission of the issue and the answer of the jury thereto. There was a conflict in the evidence but this merely presented a fact question which the jury found against appellants.

Appellants present points relative to the court's definition of "good cause", asserting that it does not take into account any act or failure to act inconsistent with the employer-employee relationship and which a reasonable employer would consider to be justification to discharge an employee. In connection with this objection the defendants tendered a requested instruction substantially to the same effect as the objection. Defendants also made several objections to the court's definition of "good cause", asserting (1) that it did not tell the jury that an employer has the right to discharge an employee for good cause even though the employee has a contract of employment for a fixed period of time, (2) that it failed to instruct the jury that there is an implied obligation on the part of an employee to do nothing which would have a tendency to injure the employer's business or reputation, and (3) that an employee who does not discharge his duties in a reasonable and proper manner, or who is guilty of disobedience or insubordination may be discharged before his term of employment expires. Defendants submitted requested instructions substantially to the same effect.

■■ The instruction concerning "good cause" as set out in the court's charge is in substance the same as that approved in Jay-Kay Paint Manufacturing Company v. Carter, 281 S.W.2d 453, (Tex.Civ.App., 1955, Ref. n. r. e.). See also Dallas Hotel Company v. Lackey, 203 S.W.2d 557, (Tex. Civ.App., 1947, Ref. n. r. e.). Special issue number 2 inquired whether or not Ginsberg was discharged without good cause. The court then instructed the jury what was meant by "good cause" as used in such issue. The instruction, in our opinion, adequately defines "good cause" for discharging an employee as applicable to the facts of this case. The legal results of the finding of good cause for discharge was a

matter for the court to determine and not for jury determination under additional instructions as defendants sought to do by their objections and requested instructions. We overrule appellants' points complaining of the action of the court in not sustaining their objections to the instruction in question and their requests for the corresponding specified additional instructions.

Special issue number 6 and the answer of the jury thereto are as follows:

"SPECIAL ISSUE NO. 6

What amount of money, if any, do you find from a preponderance of the evidence that the plaintiff could have earned in the exercise of reasonable diligence in other employment, above all necessary expenses, from October 16, 1965 until March 8, 1967?

Answer in dollars, if any, and cents, if any.

ANSWER: $10,800"

Special issue number 7 and the answer of the jury thereto are as follows:

"SPECIAL ISSUE NO. 7

What amount of money, if any, do you find from a preponderance of the evidence that the plaintiff could have earned in the exercise of reasonable diligence in other employment, above all necessary expenses, from March 9, 1967 until August 31, 1968?

Answer in dollars, if any, and cents, if any.

ANSWER: -0-"

■■ Appellants' contention that such issues are not supported by pleadings and constitute a comment on the weight of the evidence are overruled. Appellants further contend that the judgment, including the allowance of interest from the date of termination of appellee's employment to the date of the trial in the sum of $3,211.79, and expenses in seeking other employment in the sum of $1340.36, is without support in the pleadings and therefore erroneous.

Appellee's pleading for general relief was sufficient to support the prejudgment interest in the absence of exceptions thereto. Buckner & Sons v. Arkansas Fuel Oil Corporation, 319 S.W.2d 204 (Tex.Civ.App. 1958, Ref. n. r. e.); Lone Star Gas Company v. Smith, 405 S.W.2d 238 (Tex.Civ.App.1966, no writ history).

■ The $90,962.93 judgment in favor of Ginsberg was computed upon a consideration of the $700.00 weekly salary from October 16, 1965 to the time of the trial, amounting to $50,800.00, less the $13,760.00 which the undisputed evidence shows to have been actually earned by appellee from Justin McCarty, plus expenses and 6% interest during that period, and a consideration of the $700.00 weekly salary to be earned by appellee under the terms of the contract from March 9, 1967 to the end of the contract on August 31, 1968, amounting to $54,200.00, less 6% discount for the period of time involved. The judgment also included expenses incurred by appellee in seeking other employment. The judgment ignored the jury finding that appellee could have earned $10,800.00 during the period from October 16, 1965 to March 8, 1967.

■ The court thus allowed a 6% discount on the damages sustained by appellee from the date of the trial until completion of the term of the contract, which amounted to a credit to appellants in the sum of $4,829.02. Appellants' pleadings did not request such a discount, but it was, nevertheless, properly allowed by the trial court. Where there has been an allowance for a future discount in favor of one of the parties to the suit it is appropriate that prejudgment interest should also be allowed to the other party. Hollwedel v. Duffy-Mott Company, Inc., 263 N.Y. 95, 188 N.E. 266, 90 A.L.R. 1312 (1933); Puller v. Royal Casualty Company, 271 Mo. 369, 196 S.W. 755 (1917). These points are overruled. No reversible error is shown.

■ We also overrule points in which appellants contend that the court erred in entering a judgment which gave them credit

in mitigation of damages of $12,419.64 when the jury in answer to special issue number 6 found the amount to be $10,800.00. The evidence supports the judgment. Obviously appellants were not injured but were benefited by the action of the court even if it had been erroneous. No reversible error is shown.

■ We overrule appellants' point that the court erred in including in issues 6 and 7 reference to an allowance to Ginsberg of reasonable expenses which he might incur in seeking other employment. The rule in such cases is stated in 17 Tex.Jur.2d Damages, Section 16, page 96 as follows:

"The expenses for which a recovery may be had include necessary and reasonable disbursements made in an effort to avoid or mitigate the injurious consequences of the defendant's wrong, whether the action is for the breach of a contract or for tort. If such expenses are the result of a prudent attempt to minimize damages they are recoverable even though the result is an aggravation of the damages rather than a mitigation."

■ In appellants' point number 44 it is contended that the court erred in sustaining appellee's motion in limine which prohibited appellants from interrogating witnesses or introducing evidence that appellee is now or will be entitled to Social Security benefits. The order of the court in connection with the motion in limine provided:

"* * * (I)t is, accordingly, ORDERED that Counsel for Defendant, and through such counsel, any and all defense witnesses, be and they are hereby, instructed to refrain from making any mention or interrogation, directly or indirectly, in any manner whatsoever, regarding any of the matters set forth in such Motion (Plaintiffs' Motion in Limine) *without first approaching the Bench and obtaining a ruling in regard to any alleged theory of admissibility outside the presence and outside the hearing of all prospective jurors and jurors ultimately selected in this cause.*"   (Emphasis ours)

The right of an employee to Social Security benefits is a matter of law and of common knowledge. However, appellants did not seek during the trial to introduce any testimony concerning whether Ginsberg would be entitled to Social Security or benefits of Medicare. The rule in such cases is stated in City of Corpus Christi v. Nemec, 404 S.W.2d 834, (Tex.Civ.App., 1966, no writ history):

"It is not reversible error for a trial court to sustain a motion in limine which requires a party to notify the court and adverse counsel out of the presence of the jury of his intention to offer certain evidence, so as to permit counsel to make his objection if he wishes in the jury's absence, such as the motion in question provided. Before a party can correctly claim error, he must offer his evidence and secure an adverse ruling from the court."

The point is overruled. Hartford Accident and Indemnity Company v. McCardell, 369 S.W.2d 331, (Texas Sup.Ct.1963).

Appellants' points are all overruled.

The judgment is affirmed.