**Carl M. HADRA, Plaintiff–Appellee,**

v.

**HERMAN BLUM CONSULTING ENGINEERS, a Texas Corporation, Defendant–Appellant.**

**No. 79–1012.**

United States Court of Appeals, Fifth Circuit.

Dec. 17, 1980.
Rehearing Denied Jan. 27, 1981.

1243

Richard L. Arnold, Dallas, Tex., for defendant–appellant.

Marvin Johnson, John P. Otto, Phoenix, Ariz., for plaintiff–appellee.

Before GODBOLD, SIMPSON and THOMAS A. CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiff Hadra recovered on his claim for wrongful discharge by defendant Blum and successfully defended against Blum's counterclaim alleging fraud by Hadra in the sale of his business to Blum. We find all issues in Hadra's favor and affirm.

Dealing between Hadra and Blum began in 1972 when Hadra sold his engineering consulting firm in Phoenix, Arizona, to Blum and began working for Blum. In late 1974, under the terms of a new contract, Hadra and his family moved to Tehran, Iran, so that he could manage Blum's operations in Iran and seek new contracts there for Blum. On July 22, 1975, Blum terminated Hadra's duties in Iran and offered him a position as a project engineer in Dallas. Hadra rejected this offer, however, and moved his family to Majorca, an island off the coast of Spain. Hadra's employment contract with Blum expired by its own terms January 31, 1976. Hadra stipulated that he did not begin to look for new employment until his return to the United States in August 1976.

In the first trial of this case the district court directed a partial verdict for Hadra, holding that the statute of limitations had run on Blum's claim that Hadra fraudulently misrepresented the business prospects of his engineering firm. On the remaining issues the jury found, in response to interrogatories, that Hadra had satisfactorily performed his duties in Iran, that Blum had not reassigned him to Dallas, and that Blum owed Hadra $4,500 for unreimbursed business expenses. Also, to an interrogatory asking the amount of damages suffered by Hadra from Blum's breach of Hadra's employment contract, the jury answered "$0." The district court entered judgment for Ha-

dra in the amount of $24,500, including $4,500 for unreimbursed expenses and $20,-000 for the unpaid balance owed by Blum for Hadra's engineering firm in Phoenix.

Hadra moved for a new trial, which the district court granted in part, limiting the new trial to the issue of damages that Hadra had suffered through January 1976 because of Blum's breach of the employment contract. The court held that the award of $0 was inappropriate because the evidence would not support an inference that Hadra reasonably could have mitigated all of his contractual damages.[1]

In the second trial the jury found that Hadra had the right to receive $97,205.10 under the terms of his employment contract and that he could not have earned any money in the exercise of reasonable diligence in other employment between July 22, 1975, and January 31, 1976. The district court awarded Hadra $121,705.10, including the contractual damages and the damages awarded in the first trial, plus 6% interest thereafter.

■■■ Blum urges first that the district court should not have granted Hadra a new trial on the ground of lack of proof of failure to mitigate. A district court's ruling on a motion for new trial will usually stand absent an abuse of discretion, but closer scrutiny is required in reviewing a district court's order granting a new trial on the ground that the jury's verdict was based on insufficient evidence. *See Spurlin v. General Motors Corp.*, 528 F.2d 612 (5th Cir. 1976); *Massey v. Gulf Oil Corp.*, 508 F.2d 92 (5th Cir. 1975). A new trial is required where there is no evidence supporting the jury's verdict. *See Parker v. Wideman*, 380 F.2d 433 (5th Cir. 1967); *cf.*

---

1. The trial judge explained in his order that there was evidence from which the jury could have inferred that Hadra could have mitigated his damages in part and had failed to do so; but that there was not evidence permitting an inference that he could have totally mitigated and had failed to do so, and that absent such a permissible inference the verdict of zero damages could not stand.

  [w]ithout analyzing the evidence in detail, it was defendant's burden, after a showing of

contractual breach by defendant, to establish the possibility of mitigation and the amount by which mitigation was possible. The Court feels that the jury, based upon the evidence before them, could have inferred that plaintiff might have mitigated within some time after he was terminated, but could not have inferred that the amount by which he could [have] mitigated would have equaled or exceeded the lower limit of his contractual damages.

*Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769–70 (5th Cir. 1973); *Indamer Corp. v. Crandon*, 217 F.2d 391, 393 (5th Cir. 1954) (refusal to order a new trial in such circumstances error of law).

Under Texas law the defendant has the burden of proving the amount of money that a wrongfully discharged employee could have earned in mitigation of damages. *See A. J. Foyt Chevrolet, Inc. v. Jacobs*, 578 S.W.2d 445, 447 (Tex.Civ.App. 1979); *Mr. Eddie's, Inc. v. Ginsberg*, 430 S.W.2d 5, 9 (Tex.Civ.App.1968), *writ ref'd n.r.e..* Blum urges that there was evidence supporting an inference that Hadra could have mitigated all damages flowing from the breach of contract. There was no such evidence. There was no substantial evidence of the amount of money that Hadra could have earned; indeed Blum implicitly concedes in its brief that the only evidence of the amount that Hadra could have earned after breach was Hadra's own testimony that he actually earned a few thousand dollars working as a consultant while he was in Majorca. Our Brother Clark suggests that the district court was in error because of the offer to Hadra of a position as project engineer in Dallas. This argument presupposes that there was evidence on the basis of which the jury could find that the Dallas position was comparable to the job in Iran and that the salary for the Dallas position was at least as great as that for Iran. Blum concedes that the Dallas position entailed less responsibility because it did not carry management duties as did Hadra's job in Iran. There was no evidence of what the salary would have been for the Dallas job.[2] Moreover, Blum's contention that the Dallas offer was evidence relating to mitigation is new on appeal. Its position at trial was it had not breached the employment contract–because 'it had never fired Hadra but merely transferred him by reassigning him to an equivalent position in Dallas and that, under the employment con-

tract, it could do this. The jury rejected this contention. The theory that the offer of the Dallas position was evidence of available post–breach employment to be considered in mitigation of damages was not presented to either judge or jury at the trial. It may not be considered on appeal in the absence of a manifest miscarriage of justice. *See Alabama Great Southern Railroad Co. v. Allied Chemical Corp.*, 501 F.2d 94, 103 (5th Cir. 1974), *opinion adopted by court en banc*, 509 F.2d 539 (5th Cir. 1975). There is no such injustice here. Thus the offer of a position in Dallas was not evidence tending to discharge Blum's burden of proving the amount of money that Hadra could have earned.

The district court did not err in granting a new trial only as to damages arising from the breach of the employment contract. Blum urges that the jury in the first trial did not find that Hadra had been wrongfully discharged and, therefore, this issue should have been retried. That jury did find, however, that Hadra has substantially performed his duties in Iran and that Blum had not reassigned him to Dallas. Under Texas law these findings mean that Hadra was wrongfully discharged. *See Dixie Glass Co. v. Pollak*, 341 S.W.2d 530, 542 (Tex.Civ.App.1960), *writ ref'd n.r.e.*, 347 S.W.2d 596 (Tex.1961) (finding of substantial performance leads to inference of dismissal without good cause).

Blum argues that the issues of wrongful discharge and damages are so interwoven that it was inherently unjust to order a new trial only of the latter. *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); *Williams v. Slade*, 431 F.2d 605, 608–09 (5th Cir. 1970). Blum also suggests that a complete new trial was required because the first jury's answers were the result of a compromise. *See Hatfield v. Seaboard Air Line Railroad Co.*, 396 F.2d 721

---

**2.** Blum argues that the jury reasonably could infer that it would have paid Hadra the same salary he had always received and that there would have been no break in other employment benefits in the Dallas position. This would have been a conclusion based upon speculation rather than evidence, and also would have ignored the revealed differences between compensation for employment in Iran and stateside employment.

(5th Cir. 1968). Blum, however, points to no circumstances, such as those listed in *Hatfield*, that indicate the possibility of a compromise verdict and concedes in its brief that jury misconduct was unlikely here. Moreover, the question of whether Hadra was wrongfully terminated is separate from the issues of how much he would have made under his contract and could have made in other reasonably obtainable employment. Thus where, as here, the jury's findings on questions relating to liability were based on sufficient evidence and made in accordance with law, it was proper to order a new trial only as to damages. *See Gasoline Products Co. v. Champlin Refining Co., supra; Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 281–83 (5th Cir. 1975); *Parker v. Wideman, supra*, 380 F.2d at 437.

■ Blum challenges the district court's charge to the jury in the second trial on the issue of mitigation, contending that it was prejudicial error to instruct that: (1) Hadra had a duty, at least for a reasonable time after his discharge, only to seek employment comparable to his previous job; (2) after that time he had to seek and accept any work for which he was qualified; and (3) he was not required to consider opportunities unreasonably distant from his usual place of employment. These limitations are derived from long–standing Texas law and are not error. *See, e.g., Kramer v. Wolf Cigar Store Co.*, 99 Tex. 597, 91 S.W. 775 (1906); *San Antonio & A. P. Ry. Co. v. Collins*, 61 S.W.2d 84 (Tex.Comm.App.1933); 38 Tex.Jur.2d, Master & Servant § 22. These limitations on the concept of "reasonable diligence" were not eliminated by the more general statements in *Dixie Glass* and *Mr. Eddie's, supra*, where limitations such as these were not at issue. Moreover, the decision in *Kramer* was by the Texas Supreme Court and not subject to being overruled by Court of Civil Appeals cases cited by appellant.

Under the above instructions the jury necessarily found that the United States (and Texas in particular) is unreasonably distant from the place of employment, or that the Dallas position was not "comparable" to the job in Iran, or it found both. We see no basis on which to predict that Texas would change its law of mitigation and hold that when one has lived in the United States and is employed to work outside the United States and is fired in breach of contract he must, as a matter of law and, without regard to distances involved, mitigate by returning to the United States and accepting employment. Nor can we predict that Texas would amend its mitigation law by holding that for such a person, as a matter of law, salary subject to United States income tax is "comparable" to salary not subject to United States income tax.

■ Blum asserts that the district court erred in refusing to order remittitur because the parties had stipulated that Hadra's annual salary in Iran was $50,000. This argument ignores that it was also stipulated that Hadra was to receive $50,000 per year in expenses, Hadra's wife was to be paid $30,000 annually, and compensation under the employment contract was to be allocated in a manner that minimized Hadra's tax liability. Reading these stipulations together, the district court correctly held that the jury could reasonably infer that the entire $130,000 due annually under the contract was actually meant to be compensation to Hadra.

■ The district court did not err in awarding prejudgment interest from the date that the employment contract ended. *A. J. Foyt Chevrolet, Inc., supra*, recently upheld such an award in a case involving issues of wrongful discharge and mitigation. *See also Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897); *McDaniel v. Tucker*, 520 S.W.2d 543 (Tex.Civ.App.1975); *Beck v. Lawler*, 422 S.W.2d 816 (Tex.Civ.App.1967), *writ ref'd n.r.e.* (interest due when "measure of recovery is fixed by the conditions existing at the time the injury is inflicted ...."); *cf. Mr. Eddie's, Inc. v. Ginsberg, supra* (award of prejudgment interest not error in case of wrongful discharge in absence of exception). *Winandy Greenhouse Construction, Inc. v. Graham Wholesale Floral, Inc.*, 456 S.W.2d 470 (Tex.Civ.App. 1970), *no writ*, and the other cases cited by

Blum are distinguishable on their facts and contrary to the weight of Texas authority.

Finally, Blum urges that its claim that Hadra fraudulently misrepresented the business prospects of his Phoenix firm was not barred as a matter of law by the two–year statute of limitations. Mr. Blum, however, stated to the court that he was aware in May 1973 that Hadra's projections did not seem to be correct and that the firm was not generating as much money as expected. That knowledge should have been enough to cause a reasonably prudent person to inquire further. Thus, the limitations period began to run at that time, *see* *Susanoil, Inc. v. Continental Oil Co.*, 519 S.W.2d 230, 238 (Tex.Civ.App.1975), *writ ref'd n.r.e.*, and expired long before Blum raised the issue of fraud as either an affirmative defense in February 1976 or a counterclaim in February 1977.

AFFIRMED.

THOMAS A. CLARK, Circuit Judge, dissenting:

Respectfully, I dissent. I disagree with the majority's handling of two of the issues raised on appeal by Herman Blum Consulting Engineers. First, in my view the district court erred in granting Carl Hadra's motion for a new trial. Second, even if the grant of a new trial was appropriate, the district court's charge to the jury in the second trial on the issue of mitigation of damages was inadequate as a matter of law thereby substantially prejudicing Blum's defense.

In granting Hadra's motion for a new trial, the district court ruled that once the jury in the first trial found that Blum had breached his employment contract with Hadra, the jury could not, under the instruc-

tions it was given and the evidence adduced at trial, have determined that Hadra was not entitled to damages for lost salary.[1] In reviewing the district court's ruling, I agree with the majority opinion that this court's decision in *Massey v. Gulf Oil Corporation*, 508 F.2d 92 (5th Cir. 1975), should guide us:

> Our review of an order granting a motion for new trial is somewhat broader than review of an order denying a motion for new trial.

> .  .  .  .  .

> We [have] noted that where the judge denies the motion and leaves undisturbed the jury's determination, all factors press in the direction of leaving the trial judge's ruling undisturbed. But where the judge has granted a new trial, the factors oppose each other. Deference to the trial judge is subjected to opposing tensions of deference to the jury as the body to whom fact finding is constitutionally allocated and deference to the decision which the jury has reached pursuant to that authority. Furthermore, where a new trial is granted on the ground that the verdict is against the weight of the evidence, we exercise closer scrutiny than where the ground is that some undesirable or pernicious influence has intruded into the trial, because to an extent the judge has substituted his judgment of the facts and credibility of witnesses for that of the jury. Thereby we protect the litigants' right to jury trial.

*Id.*, at 94–95.

I part company with the majority, however, when it concludes that a new trial was required in this case because there was no evidence to support an inference by the jury in the first trial that Hadra could have mitigated his damages resulting from the

---

1. In its order granting a partial new trial, the district court stated in pertinent part:

   The court has concluded that the jury could not, under the instructions it was given, have properly reached the conclusion that an award of $0 was appropriate, based upon the evidence adduced at trial. Without analyzing the evidence in detail, it was defendant's burden, after a showing of contractual breach by defendant, to establish the possi-

   bility of mitigation and the amount by which mitigation was possible. The court feels that the jury based upon the evidence before them could have inferred that plaintiff might have mitigated within some time after he was terminated, but could not have inferred that the amount by which he could mitigated [sic] would have equalled or exceeded the lower limit of his contractual damages.

breach of the employment contract. Upon review of the record, I am convinced that the jury in the first trial had ample evidence to support its verdict.

Blum terminated Hadra's assignment in Teheran, Iran, on July 22, 1975. Hadra was advised of his dismissal by a letter from the firm's president, Herman Blum, which was hand delivered to Hadra by Blum's marketing manager, Mr. Ken Wallace. The termination letter read as follows:

July 2, 1975

Mr. Carl Hadra
C/O Iran Electronics Industries
Box 66/1500
Saltanatabad, Teheran, Iran
Dear Carl:

A decision has been made by Herman Blum Consulting Engineers, Inc. to terminate your employment in Iran upon the delivery of this letter to you by Ken Wallace effective immediately.

Simultaneously, we terminate reimbursment [sic] for any and all allowances and expenses. We request you hand over to Mr. Wallace all Herman Blum Consulting Engineers, Inc. credit cards.

We simultaneously offer you employment in our Dallas office in the position of Project Design Engineer under the direction of Mr. Fernando Meneses.

Should you accept this position and stay employed with us for 12 months after arrival in Dallas, we will then reimburse you for reasonable moving expenses.

Yours very truly,
HERMAN BLUM CONSULTING ENGINEERS, INC.
By: /S/ ————————————
Herman Blum, President

In evaluating Blum's motion for a new trial, the key question is whether there was adequate evidence presented at the first trial to support the jury's conclusion that Hadra could have mitigated all of his damages resulting from Blum's breach of the employment contract. "Could have mitigated" required Hadra to make some effort to seek employment. As stated in the majority opinion, Hadra stipulated that he did not begin to look for new employment until his return to the United States in August, 1976. Hadra testified that he chose to remain overseas, jobless, until the summer of 1976 so that he could take advantage of federal income tax provisions which provide favorable tax treatment for American expatriates who live and work overseas for an extended period. Thus, Hadra apparently hoped to reduce his U.S. income taxes on the approximately $50,000 in total compensation which he had received from Blum Consulting Engineers prior to his discharge on July 22, 1975. Of course, while sojourning on Majorca, a Mediterranean resort island off the coast of Spain, Hadra also permitted his possible claim against Blum to accrue for lost compensation from July 22 until January 1, 1976. Although there was significant disagreement at trial over how much of the $130,000 annual total compensation package was actually Hadra's salary, it is clear that while in Teheran his salary was significantly higher than it had been in this country apparently because of the extremely high cost of maintaining a satisfactory American lifestyle in Iran.

Hadra obtains here that which we all dream about—enjoying our cake and it being there after the feast. As the result of the new trial on damages only, Hadra spent a year relaxing on Majorca, received the $97,205.10 in salary and expenses for the remainder of the unexpired employment contract and avoided federal income taxes. The Texas jurors hearing this evidence had ample evidentiary basis for the zero verdict, believing as I do that Hadra should have accepted the job offer from Blum, returned to Dallas and paid his income taxes. If Hadra had not wanted to work for Blum, he could have returned and obtained a comparable position at a city of his choice, as he did in Los Angeles after returning in 1976. In my view the jury took a common sense view of what was fair between the parties and the district court erred in ruling that there was no basis for the zero verdict.

At the first trial the jury was given special interrogatories to answer. Question number two asked: "Do you find from a

preponderance of the evidence that in July 1975, Blum Engineering reassigned Hadra to Dallas, Texas?" The jury answered that Blum "did not reassign" Hadra to Dallas. However, while Hadra may not have been "reassigned" to Dallas, the letter reproduced above clearly indicates that Blum Engineering did offer Hadra a new position back at the firm's headquarters in Dallas. It was perfectly reasonable for the jury to find, as it apparently did, that although Blum did not reassign Hadra to Dallas, it did make Hadra a good faith offer of new employment at the Dallas office. This conclusion is perfectly reasonable when one considers the nature of the employment relationship between Hadra and Blum. Hadra was working for Blum in Teheran under the terms of an employment contract. The terms of that contract stated that Hadra was to represent Blum Engineering in its efforts to expand its business with the Iranian government. Hadra was hired under the contract to work only in Iran. Unlike the typical employer–employee relationship in which an employer may reassign his employee to a new work location, the contract in dispute here would not permit Blum to reassign Hadra to its Dallas office. Thus, although the jury found that Hadra was not reassigned to Dallas, it is quite clear from the record that Blum had offered Hadra a comparable job back in this country.

The majority concludes that the jury could not have considered the Dallas job offer as evidence relating to Hadra's duty to mitigate because Blum did not present this "theory" to the jury. I can see no reason why the jury could not or should not have considered the evidence relating to the Dallas job offer in determining whether Hadra had fulfilled his duty to mitigate. In my view, the "theory" was presented to the jury in the first trial. Just as the majority acknowledges in its statement of facts, it is abundantly clear that Hadra was offered a new job with the firm back in Dallas.

2. Tr.Vol. III, at 147.

In addition to the offer included in the termination letter set forth above, the jury also heard testimony concerning the job offer. Herman Blum testified that his firm offered Hadra a Dallas job because the firm "had a heavy workload in Dallas and needed his engineering expertise." [2] Furthermore, Blum explained that he had conditioned the reimbursement of Hadra's reasonable moving expenses from Teheran to Dallas on Hadra's remaining with Blum Consulting Engineers because Blum had accidentally heard that Hadra was trying to negotiate an employment contract with another firm and Blum did not want to pay Hadra's moving expenses back to Dallas and then have Hadra resign shortly thereafter.

I submit that the jury in the first trial had sufficient evidence before it to support its finding that Blum Consulting Engineers had met its burden on the mitigation of damages issue and that Hadra had failed completely to mitigate his damages resulting from his wrongful discharge.

At the second trial, the trial judge gave the following charge to the jury on the issue of mitigation of damages:

After an employment contract has been breached, the employee has a duty to mitigate damages. That means that the employee must exercise reasonable diligence in seeking employment of the same or similar quality as the wrongfully terminated employment for a reasonable time. The employee may exercise reasonable diligence by seeking employment which pays a comparable salary and which consists of a position of similar prestige as the wrongfully terminated employment.

However, after a reasonable time, the employee must seek and accept any employment for which he is qualified. In the exercise of reasonable diligence, an employee must consider all opportunities for the kind of employment which he has a duty to seek, whomever the employer, *provided the place of employment is not a geographical area unreasonably distant*

*from his usual place of employment.* (Emphasis added.)

This jury charge was not given at the first trial. The majority upholds the jury charge on the basis that the limitations on the duty to mitigate, including the geographical limitation, "are derived from long–standing Texas law and are not error." The majority cites as authority *Kramer v. Wolf Cigar Stores Co.,* 99 Tex. 597, 91 S.W. 775 (1906), and *San Antonio & A. P. Ry. Co. v. Collins,* 61 S.W.2d 84 (Tex. Comm.App.1933). My view is that under the circumstances of this case Texas law would not narrow Hadra's duty to search for new employment to an area not "unreasonably distant from his usual place of employment," i.e., Teheran.

The district court's charge had the effect of limiting Hadra's efforts to secure new employment to only Teheran or somewhere else in Iran. Therefore, under the charge as given the jury would not have been allowed to consider Hadra's job opportunities back in the United States in evaluating whether he had satisfied his duty to mitigate.

The cases relied upon by the majority are an insufficient basis on which to support the geographical limitation on the duty to mitigate. *Kramer* was an action brought by a wrongfully discharged employee who had served as a cigar store manager in the Dallas area beginning in 1902. There the evidence indicated that, once discharged, the ex–cigar store manager had

> made no effort to secure any other employment after his discharge and before he went into business for himself, for the reason, as he states, that he knew that the attempt to secure employment of the same character as that which he had of defendant would be useless as there were none such open in Dallas.

91 S.W. at 777. However, although the Texas court did hold that a discharged employee must secure "by reasonable diligence ... another position of substantially the same character and grade as that which he had held," the court made no specific mention that the former cigar store manager could restrict his job seeking efforts to the Dallas area only.

In *San Antonio & A. P. Ry. Co. v. Collins, supra,* the employee was discharged in 1921 from his position as a switchman for the railroad company at its yards in Houston. Although the company offered the worker a job at either the San Antonio or Kennedy railroad yards, Collins refused and eventually filed suit. Acknowledging a wrongfully discharged employee's general duty to mitigate as stated in *Kramer,* the court in *San Antonio & A. P. Ry. Co.* held that Collins satisfied his general duty to mitigate by "making a reasonable effort to secure other employment at Houston; and his refusal to accept employment at distant places, involving change of residence and loss of position and security in the Houston yards, was within his rights under the contract." 61 S.W.2d at 89.

However long–standing the Texas law as stated by *Kramer* and *San Antonio & A. P. Ry. Co.* may be, neither case addresses the geographical limitation on the duty to mitigate in the context of modern, sophisticated employment relationships between large firms engaged in multinational operations and their thousands of American expatriate employees who serve their companies abroad. In this age when American businesses are actively engaged in overseas business ventures such as oil exploration, mining, and construction projects of all kinds in all parts of the world, it is unrealistic to conclude from the authority relied on by the majority that Texas law would require a wrongfully discharged expatriate employee to search for new employment *only* in the vicinity of their former foreign assignment.

But that is just what happened in this case. The trial court effectively forced the jury in the second trial to ignore job opportunities that Hadra had in the United States in its consideration of his duty to mitigate. In my opinion, Texas law would require that an expatriate employee who loses his overseas job and is unable to secure comparable employment in the general vicinity of that overseas assignment should

return to his home in this country within a reasonable period of time and undertake serious efforts to secure employment here. Application of the geographical limitation to the duty to mitigate under the circumstances of this case necessitates an illogical, unnecessary result.

I would hold that the district court erred in granting the appellee's motion for a new trial. I would vacate the verdict of the jury in the second trial and reinstate the jury's verdict from the first trial. Failing that, I submit that the trial judge's charge to the jury in the second trial on the issue of mitigation unfairly prejudiced the appellant, necessitating a new trial on the issue of damages.